Filed 1/22/16  Certified for publication 2/17/16 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE ex rel. GOVERNMENT EMPLOYEES INSURANCE COMPANY et al., | D067061 |
| Plaintiffs and Appellants, | (Super. Ct. No. 37-2013-00029878-CU-FR-NC) |
| v. | |
| JANICE S. CRUZ, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Earl H. Maas III, Judge.  Reversed with directions.

Manning & Kass, Ellrod, Ramirez, Trester, Amy L. Pope, Dennis B. Kass and Candace E. Kallberg, for Plaintiffs and Appellants.

Caietti Law Group and Robert M. Caietti for Defendant and Respondent.

Government Employees Insurance Company, GEICO General Insurance Company, GEICO Casualty Company, and GEICO Indemnity Company (collectively,

GEICO), as relator,[1] brought a qui tam action[2] asserting statutory and common law claims for damages and civil penalties against Dr. Janice Cruz (and others) arising from her alleged involvement in an insurance fraud conspiracy. The trial court granted Dr. Cruz's motion to bind GEICO to certain interrogatory responses, then granted her summary judgment motion on the basis those responses established GEICO was unable to prove its case against Dr. Cruz. On appeal, GEICO contends the court erred by (1) binding GEICO to its earlier interrogatory responses, (2) excluding additional evidence offered in opposition to the summary judgment motion, and (3) granting summary judgment on its statutory claim.[3] For reasons we shall explain, we reverse the judgment and direct the trial court to enter an order denying summary adjudication of GEICO's statutory claim and granting summary adjudication of its common law claims.

OVERVIEW

GEICO issues automobile insurance policies. GEICO investigated Dr. Cruz (a chiropractor) and other defendants (another chiropractor, a doctor of osteopathic

---

[1] "A relator is a real party in interest in whose name a state or Attorney General brings a lawsuit. He or she is generally the person who furnishes information on which the lawsuit is based." (*State ex rel. Wilson v. Superior Court* (2014) 227 Cal.App.4th 579, 587, fn. 2 (*Wilson*).)

[2] A qui tam action is " '[a]n action brought under a statute that allows a private person to sue for a penalty, part of which the government or some specified public institution will receive.' " (*People ex rel. Allstate Ins. Co. v. Weitzman* (2003) 107 Cal.App.4th 534, 538 (*Weitzman*).)

[3] GEICO does not challenge the court's ruling as to the common law claims.

medicine, and their related professional corporations and medical practices)[4] for submitting fraudulent insurance claims for medical expenses incurred as a result of treating injuries sustained in automobile accidents involving GEICO policyholders. After the investigation, GEICO filed this action alleging defendants violated the Insurance Fraud Prevention Act (the Act) (Ins. Code, § 1871 et seq.; Pen. Code, § 550) and the common law by submitting false insurance claims to GEICO.

GEICO alleged Dr. Cruz had engaged in insurance fraud both directly and in conspiracy with the other defendants. GEICO asserted Dr. Cruz engaged in "upcoding." According to GEICO, when Dr. Cruz submitted claims for reimbursement using standard insurance industry billing codes—"Current Procedural Technology" or "CPT"codes[5]— she sometimes used a code that corresponded to a more complex level of treatment than she actually provided. The higher-level CPT code generally carried with it a higher rate of reimbursement.[6]

---

[4]    The other defendants are Thrive Physical Medicine, Inc. (Thrive); Ronald B. Brizzie, D.O.; Brizzie Medical Inc.; Victor J. Tomassetti, D.C.; Victor J. Tomassetti Professional Chiropractic Corp.; North Coast Chiropractic; and Pacific Coast Injury Group.

[5]    CPT codes "were jointly developed by the American Medical Association and the Health Care Financing Administration and are the standardized nomenclature for use in insurance claims." (*People ex rel. Allstate Insurance Co. v. Muhyeldin* (2003) 112 Cal.App.4th 604, 607.)

[6]    For example, GEICO alleged Dr. Cruz repeatedly submitted claims using the CPT code for a "more comprehensive" initial exam of a new patient, even when she was reexamining an existing patient. Dr. Cruz's billing schedule indicates she charged $175 for initial exams and $125 for re-exams.

3

GEICO also asserted Dr. Cruz violated the Act by paying unlawful referral fees to defendant Dr. Tomassetti, claiming she masked the referral fees by styling them as percentage rent due under a lease. GEICO further claimed Dr. Cruz conspired with other defendants, as evidenced by billing and marketing materials that identified her as a member of the Thrive medical group. This contradicted her discovery responses, which denied she had any business relationship with Thrive.

Dr. Cruz denied any wrongdoing. With regard to upcoding, she claimed she chose "the best code that describe[d] [her] level of service." She further argued that even if she had inadvertently used an incorrect code, GEICO did not suffer any damages because she had billed the correct amount of payment for the level of treatment she provided. She contended this lack of damages was fatal to GEICO's statutory and common law claims. Dr. Cruz also denied her rent payments were unlawful referral fees and that she had conspired with the other defendants.

The trial court granted summary judgment in Dr. Cruz's favor, finding GEICO had not shown it suffered damages or that Dr. Cruz's lease resulted in actual (rather than merely potential) referrals.

FACTUAL AND PROCEDURAL BACKGROUND

In December 2011, GEICO began investigating Dr. Cruz and the other defendants for insurance fraud. GEICO filed a complaint against defendants in January 2013, and filed its operative verified first amended complaint (complaint) in July 2013. The complaint alleged defendants provided chiropractic, diagnostic, referral and/or medical services to individuals injured in automobile accidents involving GEICO policyholders.

4

It further alleged Dr. Cruz, separately and together with the other defendants, had submitted false, misleading, and improper claims on behalf of the claimants.[7] The complaint asserted causes of action for (1) violating the Act, (2) conversion, (3) fraud, (4) intentional misrepresentation, (5) negligent misrepresentation, (6) constructive trust, (7) equitable lien, and (8) restitution.

In September 2013, Dr. Cruz served 99 requests for admissions asking GEICO to admit, for example, that she did not create or submit false claims, billings, or reports on behalf of the claimants, and that she did not conspire with the other defendants to do so. She also served Judicial Council form interrogatory No. 17.1, part of which asked GEICO to "state all facts upon which [it] based" each response to the accompanying requests for admissions that was not "an unqualified admission." After objecting, GEICO outright denied 93 of the requests for admissions and stated it lacked sufficient information to admit or deny the remaining six. As to the outright denials, GEICO responded to the accompanying state-all-facts interrogatory with only objections and the following statement: "Discovery is ongoing and Plaintiff reserves the right to supplement this response."

---

7    The complaint identified 12 allegedly fraudulent claims submitted to GEICO by Dr. Cruz on behalf of eight claimants (GEICO subsequently withdrew its claims regarding three claimants); 61 allegedly fraudulent claims submitted by Dr. Tomassetti on behalf of 60 claimants; and 115 allegedly fraudulent claims submitted by Dr. Brizzie on behalf of 113 claimants. Some of the doctors submitted claims on behalf of some of the same claimants.

5

After an unsuccessful meet-and-confer process, Dr. Cruz moved to compel further responses. GEICO opposed the motion, but also served a "supplemental response to form interrogatories" on January 28, 2014 (the January Responses). (Capitalization omitted.)

For four of the five claimants, the January Responses identified the dates of service, a brief description of the services provided, the CPT code Dr. Cruz used to describe the service she provided, and a parenthetical explanation of Dr. Cruz's alleged wrongdoing.[8] As to all five, GEICO responded that Dr. Cruz "made improper referrals" to either Dr. Brizzie or Dr. Tomassetti. GEICO stated that Dr. Cruz's claims "are false or fraudulent." However, GEICO added, because "[d]iscovery is continuing . . . [GEICO] cannot provide the total amount it seeks to recover . . . ." In a general objection, GEICO stated it "has not yet completed its discovery and investigation of the facts giving rise to this action, but has made a diligent, good faith effort to obtain all information responsive to these Interrogatories within [GEICO]'s possession, custody or control. Accordingly these responses are made without prejudice to [GEICO]'s right to introduce prior to or at the time of trial or otherwise use any additional information it may obtain as a result of [GEICO]'s continuing discovery and investigation . . . ."

---

[8] For example, one response states Dr. Cruz treated "Irene D." in January 2012 and billed GEICO using the CPT code for a new patient. When Dr. Cruz treated Irene D. again in February, March, and April 2012, she again billed GEICO using the new patient CPT code. The response accused Dr. Cruz of "upcoding, overbilling, [and] billing in excess of medical necessity."

6

In February 2014, the trial court found GEICO's original "discovery responses . . . insufficient and without merit," granted Dr. Cruz's motion to compel, and sanctioned GEICO approximately $4,000.

After the hearing, Dr. Cruz's counsel told GEICO's counsel he considered the supplemental January Responses deficient. GEICO's counsel represented that the responses contained all the information GEICO possessed, subject to supporting information an expert would provide in the future. Based on this representation, Dr. Cruz's counsel decided not to pursue further meet-and-confer efforts or move to compel further responses.

In April, GEICO replaced its trial counsel.

In May, Dr. Cruz moved for summary judgment on the basis that GEICO's January Responses established it had no evidence to prove its case against Dr. Cruz. The motion emphasized GEICO's failure to identify or calculate its claimed damages. Dr. Cruz supported her motion with a declaration justifying the services she provided to the claimants and opining her fees were "at or below the customary charges in this locality for the same service . . . ." She also denied billing for medical services that were not medically necessary, knowingly billing for services not performed, knowingly duplicating any charges, or making any improper referrals.

In June, GEICO served "further supplemental responses to form interrogatories" (the June Responses) that consisted of a single response addressing all 99 of Dr. Cruz's requests for admissions. (Capitalization omitted.) The response incorporated GEICO's prior responses and added:

7

"Defendant's use of CPT Codes 99213, 99214 and 99215 are unsupported by the medical documentation and consists of upcoding. Neither the treatment notes, reports, nor the findings support the use of any of these CPT codes.  Further, as it pertains to patients, Irene D. and Benjamin L., each was involved in three automobile accidents.  Each was billed as a new patient, rather than a continuing patient, as required by the code, for each of the two subsequent accidents and therefore the initial exams were upcoded.  With regards to patient, Megan S. and others, billing for services not rendered included cumulative billing for radiological codes where the codes reflect[] more views than were actually taken."

GEICO further asserted that Dr. Cruz had an improper referral agreement with Dr. Tomassetti under which she paid him certain percentages of her collections as rent, which GEICO contended was disproportionate to any alleged rent, services, or other overhead Dr. Tomassetti may have been providing.  The response also cited marketing materials identifying Dr. Cruz as "an integral member of" Thrive, which GEICO asserted "shows an intertwining of Dr. Cruz with the other defendants in this case . . . ."

The following month, Dr. Cruz filed a motion seeking to bind GEICO to the January Responses.[9]  GEICO opposed.  On August 8, the trial court bound GEICO to its January Responses, finding GEICO's "initial failure . . . to answer the interrogatory correctly has substantially prejudiced" Dr. Cruz.  However, the court would allow GEICO to oppose Dr. Cruz's summary judgment motion with evidence she produced after the January Responses, subject to a significant caveat:  if the new evidence was

_____

9    Under Code of Civil Procedure section 2030.310, subdivision (b), "[t]he party who propounded an interrogatory to which an amended answer has been served may move for an order that the initial answer to that interrogatory be deemed binding on the responding party for the purpose of the pending action"].)

8

derived from evidence GEICO knew about but did not disclose when it served the January Responses—what the trial court called "fruit of the poisonous tree"— the court would also exclude the new evidence.

On September 11, GEICO filed an opposition to Dr. Cruz's summary judgment motion.  GEICO supported its opposition with a declaration from a chiropractor (Michael J. Stahl, D.C.) who, after addressing Dr. Cruz's claims on a claimant-by-claimant basis, opined the claims contain "material misrepresentations" and "do not accurately reflect the procedures or services that were performed, and/or these services were not adequately documented in the medical records."  Dr. Stahl opined Dr. Cruz's conduct constituted upcoding, which he defined as "bill[ing] for more work, judgment and risk than was truly performed (via CPT coding)"; "[b]illing for services never rendered"; and "represent[ing] via CPT coding . . . a higher level of service for reimbursement" than is warranted by the service provided.  Dr. Stahl cited instances in which Dr. Cruz used CPT codes that inaccurately identified returning patients as new patients, and one occasion on which Dr. Cruz billed for reviewing seven X-rays when she took only five.[10]  GEICO also cited Dr. Cruz's submission of claims using CPT codes for "level four" and "level five" services, when she admitted in her deposition that those services "are beyond the scope of [her] practice."

GEICO also lodged excerpts from Dr. Cruz's deposition transcript; the 2004 and 2006 lease agreements between Dr. Cruz and Dr. Tomassetti; billing and marketing

---

[10]     After GEICO brought the X-ray discrepancy to Dr. Cruz's attention during her deposition, she tendered GEICO a check to cover the $90 overpayment she received.

materials showing Dr. Cruz's affiliation with Thrive; and Dr. Cruz's discovery responses denying she had any business relationship with Thrive.

Dr. Cruz filed a reply brief and objected to all of GEICO's opposing evidence on the basis it was barred by the trial court's August 8 order binding GEICO to the January Responses.

On September 19, the trial court sustained Dr. Cruz's evidentiary objections and granted her summary judgment motion. The court explained,

> "[Plaintiff was] bound to [the January Responses]. Plaintiff's opposition to the present motion relies, almost completely, on evidence which was within its prior counsel's possession or knowledge at the time of the discovery responses, but was not provided. Plaintiff cannot resuscitate the evidence by re-inquiring of the same information subsequent to the Court's order . . . .
>
> "The Court finds the evidence provided insufficient to establish upcoding by the moving defendant. To the extent admissible, the evidence does not establish Defendant charged more for services provided than she should have. Indeed, the evidence persuasively establishes that she charge[d] the correct amount, or less, for the services provided, and was often paid even less than charged. There is no admissible evidence to establish Fraud or Deceit by Dr. Cruz.
>
> "The Plaintiff's evidence regarding Defendant's lease, and rental payments, even if admitted, was not persuasive. There was no evidence provided of actual referrals, and the potential for referrals, as suggested by the Plaintiff, is not sufficient."

The court entered judgment in Dr. Cruz's favor on October 27, 2014.

DISCUSSION

I. *Overview of the Act*

To provide context for our analysis of the trial court's rulings, we begin with an overview of the Act.

Insurance Code section 1871.7 is a portion of the Act that relates to insurance fraud. (*Wilson, supra*, 227 Cal.App.4th at p. 588.) Its purpose is "to deter fraudulent automobile insurance claims and to facilitate the investigation and prosecution of insurance fraud." (*Weitzman, supra*, 107 Cal.App.4th at p. 548.) Section 1871.7 "has been repeatedly amended specifically to authorize *and encourage* insurers to bring fraud actions under the section." (*Id.* at p. 546.) "Subdivision (a) makes it unlawful to knowingly employ runners or cappers to procure clients or patients to obtain insurance benefits."[11] (*Wilson*, at p. 588.) "The conduct made unlawful by subdivision (a) is identified by a single verb: To employ. Subdivision (a)'s single verb makes a single act unlawful: Employment. What kind of employment is unlawful? Employment of a person or persons ('runners, cappers, steerers or other persons'), for a specified purpose: 'to procure clients or patients to perform or obtain services or benefits . . . that will be the basis for' an insurance claim. *Subdivision (a) is violated by the employment of others*

_____

[11]     Insurance Code section 1871.7, subdivision (a) provides in full:  "It is unlawful to knowingly employ runners, cappers, steerers, or other persons to procure clients or patients to perform or obtain services or benefits pursuant to Division 4 (commencing with Section 3200) of the Labor Code or to procure clients or patients to perform or obtain services or benefits under a contract of insurance or that will be the basis for a claim against an insured individual or his or her insurer."

11

*with that objective; it does not make proof of that result a prerequisite to its violation*."

(*Id.* at p. 593, italics added.) GEICO contends Dr. Cruz's alleged payment of referral fees masked as percentage rent violates this subdivision.

Insurance Code section 1871.7, subdivision (b) "prescribes civil penalties and other remedies for violation of either subdivision (a) of that section or Penal Code sections 549, 550, or 551, which target insurance and workers' compensation fraud."[12] (*Wilson, supra*, 227 Cal.App.4th at p. 588.) As relevant here, Penal Code section 550 provides as follows:

> "(a) It is unlawful to do any of the following, or to aid, abet, solicit, or conspire with any person to do any of the following:
>
> "(1) Knowingly present or cause to be presented any false or fraudulent claim for the payment of a loss or injury, including payment of a loss or injury under a contract of insurance.
>
> [¶] . . . [¶]
>
> "(5) Knowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim.

---

12    Insurance Code section 1871.7, subdivision (b) provides in full: "Every person who violates any provision of this section or Section 549, 550, or 551 of the Penal Code shall be subject, in addition to any other penalties that may be prescribed by law, to a civil penalty of not less than five thousand dollars ($5,000) nor more than ten thousand dollars ($10,000), plus an assessment of not more than three times the amount of each claim for compensation, as defined in Section 3207 of the Labor Code or pursuant to a contract of insurance. The court shall have the power to grant other equitable relief, including temporary injunctive relief, as is necessary to prevent the transfer, concealment, or dissipation of illegal proceeds, or to protect the public. The penalty prescribed in this paragraph shall be assessed for each fraudulent claim presented to an insurance company by a defendant and not for each violation."

"(6)  Knowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit.

[¶] . . . [¶]

"(b)  It is unlawful to do, or to knowingly assist or conspire with any person to do, any of the following:

"(1)  Present or cause to be presented any written or oral statement as part of, or in support of or opposition to, a claim for payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact.

"(2)  Prepare or make any written or oral statement that is intended to be presented to any insurer or any insurance claimant in connection with, or in support of or opposition to, any claim or payment or other benefit pursuant to an insurance policy, knowing that the statement contains any false or misleading information concerning any material fact."

The elements generally necessary to find a violation of Penal Code section 550 are (1) the defendant's knowing presentation of a false claim, (2) with the intent to defraud. (See *People v. Booth* (1996) 48 Cal.App.4th 1247, 1252; *People v. Singh* (1995) 37 Cal.App.4th 1343, 1370-1371 (*Singh*); CALCRIM No. 2000.)  A "violation of Insurance Code section 556[13] is complete when a false claim for payment of loss is presented to an insurance company or a false writing is prepared or presented with intent to use it in connection with such a claim whether or not anything of value is taken or received." (*People v. Cohen* (1970) 12 Cal.App.3d 298, 321.)  "It is not necessary that anyone

---

13    Insurance Code section 556 was repealed and subsequently reenacted as Penal Code section 550.  (See *Singh, supra*, 37 Cal.App.4th at p. 1351, fn. 1.)

actually be defrauded or actually suffer a financial, legal, or property loss as a result of the defendant's acts."  (CALCRIM No. 2000.)

## II.  *Motion to Bind*

The trial court granted Dr. Cruz's summary judgment motion on the basis GEICO had no evidence to support its case against Dr. Cruz.  That basis is supported largely by the trial court's order binding GEICO to the January Responses, which led the trial court to exclude GEICO's opposition evidence.  GEICO contends the court erred in binding GEICO to the January Responses because Dr. Cruz did not satisfy the three statutory conditions required to invoke that remedy.  We agree.

"Without leave of court, a party may serve an amended answer to any interrogatory that contains information subsequently discovered, inadvertently omitted, or mistakenly stated in the initial interrogatory.  At the trial of the action, the propounding party . . . may use the initial answer . . . , and the responding party may then use the amended answer."  (Code Civ. Proc., § 2030.310, subd. (a).)  However, "[t]he party who propounded an interrogatory to which an amended answer has been served may move for an order that the initial answer to that interrogatory be deemed binding on the responding party for the purpose of the pending action."  (*Id.*, § 2030.310, subd. (b).)

To prevail on a motion to deem interrogatories binding, the moving party must establish three conditions.  First, "[t]he initial failure of the responding party to answer the interrogatory correctly [must have] substantially prejudiced the party who propounded the interrogatory."  (Code Civ. Proc., § 2030.310, subd. (c)(1).)  Second, the responding party must have "failed to show substantial justification for the initial answer

14

to that interrogatory." (*Id.*, § 2030.310, subd. (c)(2).) Finally, the prejudice to the propounding party must not be curable either by a continuance to permit further discovery or by the use of the initial answer. (*Id.*, § 2030.310, subd. (c)(3).) We review the trial court's discovery rulings for an abuse of discretion. (See *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 733.)

The trial court erred by finding Dr. Cruz established each of Code of Civil Procedure section 2030.310, subdivision (c)'s three prerequisites. Assuming without deciding that GEICO failed to show substantial justification for the January Responses, the record does not support a finding that Dr. Cruz was substantially prejudiced by the June Responses or that any prejudice could not have been cured by a continuance or use of the January Responses at trial.

Dr. Cruz argues she was prejudiced by GEICO's former trial counsel's representation that the January Responses contained all the information in GEICO's possession because, "[i]n reliance on this representation," she "terminated the meet and confer process, did not pursue an additional motion to compel further responses, and filed a summary judgment motion . . . ." We are not persuaded. Had Dr. Cruz not relied on counsel's representation, she might have continued the meet and confer process and filed another motion to compel further responses, which, if successful, would have resulted in GEICO serving amended responses—the very action she now contends prejudiced her. Although GEICO waited until June to amend its responses, Dr. Cruz would not have received the information significantly sooner if she had engaged in further meet-and-confer efforts and waited for the court to rule on a noticed motion to compel.

15

Even if GEICO's amendment of the January Responses six months later prejudiced Dr. Cruz, the trial court also erred by finding the prejudice could not have been cured with a continuance. When GEICO served the June Responses, trial was set for March 2015—nine months later. Dr. Cruz does not suggest this was insufficient time to address the newly disclosed information. Rather, she argues "[a] continuance would only benefit [GEICO]'s efforts to avoid *Union Bank v. Superior Court* [(1995) 31 Cal.App.4th 573, 580-581] (summary judgment motion may be based on discovery responses indicating plaintiff lacks evidence to support its claims) and *D'Amico v. Board of Medical Examiners* [(1974) 11 Cal.3d 1, 22-23] (a party's evidence submitted in opposition to a summary judgment motion must be disregarded to the extent it contradicts the party's prior clear and unequivocal admissions of fact)." Contrary to Dr. Cruz's claim, rewarding GEICO has no bearing on whether she suffered incurable prejudice. And Dr. Cruz has not identified any "clear and unequivocal admissions of fact" in the January Responses that were "contradict[ed]" by the June Responses.

Because Dr. Cruz failed to establish she was prejudiced by the June Responses or that any such prejudice could not have been cured by a continuance or use of the January Responses at trial, the trial court erred by binding GEICO to the January Responses.

### III. *Summary Judgment Motion*

On appeal, GEICO does not challenge the trial court's rulings regarding the common law claims. Instead, GEICO maintains it presented evidence sufficient to show triable issues of fact exist regarding whether Dr. Cruz violated the Act, but the trial court erroneously excluded that evidence, which, in turn, resulted in the trial court erroneously

16

granting Dr. Cruz's summary judgment motion. Dr. Cruz counters that GEICO's evidence does not establish she violated the Act, and even if it showed she used incorrect CPT codes, the trial court nonetheless properly granted summary judgment because GEICO did not prove those errors caused it any damages. We conclude (1) the trial court erroneously excluded GEICO's evidence, (2) GEICO's evidence shows triable issues of fact exist regarding whether Dr. Cruz violated the Act, and (3) GEICO is not required to prove it was damaged to prevail on a claim for violation of the Act.

## A. *Summary Judgment Principles*

A defendant moving for summary judgment "bears the burden of persuasion that there is no triable issue of material fact and that [the defendant] is entitled to judgment as a matter of law." (*Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) To meet this burden, the defendant must show one or more elements of the cause of action cannot be established, or that there is a complete defense to that cause of action. (*Ibid*.) The defendant may make this showing by relying on the plaintiff's "factually devoid discovery responses." (*Union Bank v. Superior Court, supra*, 31 Cal.App.4th at p. 590.) If the defendant does not present sufficient evidence to meet its initial burden, the court must deny the summary judgment motion. (*Aguilar*, at p. 850.)

Once the defendant satisfies its burden, " 'the burden shifts to the plaintiff . . . to show that a triable issue of one or more material facts exists as to that cause of action or a defense thereto.' " (*Aguilar, supra*, 25 Cal.4th at p. 849.) The plaintiff may not rely upon the mere allegations or denials of her pleadings to show a triable issue of material fact exists. (*Ibid*.)

17

We review a summary judgment de novo. (*Buss v. Superior Court* (1997) 16 Cal.4th 35, 60.) "In practical effect, we assume the role of a trial court and apply the same rules and standards which govern a trial court's determination of a motion for summary judgment." (*Lenane v. Cont'l Mar. of San Diego* (1998) 61 Cal.App.4th 1073, 1079.) Thus, we apply the same three-step analysis trial courts use: "First, we identify the issues framed by the pleadings. Second, we determine whether the moving party has established facts justifying judgment in its favor. Finally, in most cases, if the moving party has carried its initial burden, we decide whether the opposing party has demonstrated the existence of a triable issue of material fact." (*Serri v. Santa Clara University* (2014) 226 Cal.App.4th 830, 858-859.) In doing so, "[w]e liberally construe the evidence in support of the party opposing summary judgment and resolve doubts concerning the evidence in favor of that party." (*Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 717.) Because "[s]ummary judgment is a drastic measure that deprives the losing party of a trial on the merits . . . [,] [a]ny doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Molko v. Holy Spirit Assn.* (1988) 46 Cal.3d 1092, 1107, superseded by statute on other grounds as stated in *Aguilar, supra*, 25 Cal.4th at p. 853, fn. 19.)

If a trial court erroneously grants summary judgment when a factual dispute exists but affects fewer than all causes of action, the appellate court may direct the trial court to enter an order granting summary adjudication of the unaffected causes of action if the moving party alternatively moved for summary adjudication. (See Code Civ. Proc.,

§ 437c, subd. (f)(2); *Troyk v. Farmers Group, Inc.* (2009) 171 Cal.App.4th 1305, 1354-1355.)

### B.  *The Court's Evidentiary Rulings*

Dr. Cruz objected to all of GEICO's opposition evidence (other than Dr. Stahl's declaration, discussed below) on the gounds it was barred by the court's order binding GEICO to its January Responses and was irrelevant.  Because the court erred by binding GEICO to its January Responses, the court also erred by excluding GEICO's evidence based on that ruling.  GEICO's opposition evidence related to Dr. Cruz's billings, alleged referral agreement, and her relationship with her alleged coconspirators.  This evidence was clearly relevant to GEICO's claims.  Thus, the trial court erred by excluding the evidence.

Dr. Cruz also objected to Dr. Stahl's declaration on the grounds his opinions lacked foundation and constituted improper legal conclusions.  We disagree.  Dr. Stahl described his educational and professional credentials.  He also stated he reviewed the following materials:  two volumes of Dr. Cruz's deposition; "[m]edical records of treatment performed by [Dr. Cruz] for patients Shawna B., Gabriel C., Irene D., Rosa H., Benjamin L., and Meghan S."; and Dr. Cruz's billing records for these patients.  Together, this information provides sufficient foundation upon which Dr. Stahl could base his opinions that Dr. Cruz upcoded and presented false claims to GEICO.  The trial court's ruling to the contrary is in error.

GEICO's erroneously excluded evidence and expert opinions show the existence of triable issues of fact that preclude summary judgment on GEICO's statutory claim.

19

As noted, GEICO's complaint asserts a statutory cause of action for violation of the Act, and common law claims for conversion, fraud, intentional misrepresentation, negligent misrepresentation, constructive trust, equitable lien, and restitution. Because GEICO does not address the common law causes of action on appeal, it has forfeited any challenges to the trial court's summary disposition of them. (See *Benach v. County of Los Angeles* (2007) 149 Cal.App.4th 836, 852 ["When an appellant fails to raise a point, or asserts it but fails to support it with reasoned argument and citations to authority, we treat the point as waived."].) However, GEICO has established that factual disputes preclude summary judgment on its statutory claim.

A triable issue of fact exists about whether Dr. Cruz violated Insurance Code section 1871.7, subdivision (a) by maintaining an unlawful referral agreement with Dr. Tomassetti. Dr. Cruz's 2004 and 2006 lease agreements specified that her "flat fee" payment to Dr. Tomassetti for use of office space and support services was a varying percentage of her monthly gross collections.[14] The Attorney General has opined in analogous contexts that to the extent a payment styled as rent exceeds the fair market value of the space and services provided, the excess may constitute an unlawful referral fee. (See 53 Ops.Cal.Atty.Gen. 117, 119 (1970) [addressing pharmacy's "rent" payment

---

[14] The "flat fee" percentage was determined by the amount of her gross billings for that month. For example, the 2004 agreement provided that if Dr. Cruz's gross billings for a given month were less than $20,000, her flat fee was 60 percent of gross collections; for gross billings between $20,000 and $100,000, her flat fee was 55 percent; and for gross billings exceeding $100,000, her flat fee was 50 percent of gross collections.

to hospital of 60 percent of gross sales to hospital's patients]; 55 Ops.Cal.Atty.Gen. 103, 108 (1972) [addressing hospital department director's payment of 50 percent of his net revenues to hospital].) This reasoning is persuasive. Thus, factual issues regarding the existence of an improper referral agreement preclude summary judgment of this predicate of GEICO's statutory claim.[15]

Triable issues of fact also exist regarding whether Dr. Cruz violated Penal Code section 550 by knowingly presenting false claims to GEICO with the intent to defraud. For example, Dr. Cruz used CPT codes that inaccurately identified returning patients as new patients; she billed for reviewing seven x-rays when she took only five; and she presented claims using CPT codes for "level four" and "level five" services, when she admitted in her deposition that those services are "beyond the scope of [her] practice." GEICO's expert, Dr. Stahl, opined these practices constitute improper upcoding. This evidence was sufficient to create a triable issue of fact regarding Dr. Cruz's presentation of false claims. Dr. Cruz's intent in doing so is a factual issue for the jury. (See *Locke v. Warner Bros., Inc.* (1997) 57 Cal.App.4th 354, 368 [fraudulent intent is a question of fact and must often be established by circumstantial evidence].)

We are unpersuaded by Dr. Cruz's argument that GEICO's evidence failed to show she "committed 'upcoding' *as defined by law*." (Italics added; capitalization omitted.) The cases she cites do not demonstrate that there is a single, established, "legal"

---

15     Contrary to the trial court's finding, it is of no moment that "[t]here was no evidence provided of *actual* referrals" (italics added); the *potential* for referrals was sufficient so long as that was Dr. Cruz's intent. (See *Wilson, supra*, 227 Cal.App.4th at p. 588.)

21

definition of upcoding.  (See *United States v. Tenet Healthcare Corp.* (C.D. Cal. 2004) 343 F.Supp.2d 922, 924-925 [definition based on allegations of complaint]; *In re Quesada* (Bankr. D.P.R. Apr. 1, 2014) 2014 WL 1329264, at *5 [same]; *Hoover v. Mercy Health* (Mo. 2013) 408 S.W.3d 140, 142, fn. 1 [defining upcoding in the context of a motion to dismiss by quoting *United States ex rel. Bledsoe v. Cmty. Health Sys., Inc.* (6th Cir. 2003) 342 F.3d 634, 638, which cited Bonnie Schreiber, et al., *Health Care Fraud* (2002) 39 Am.Crim. L.Rev. 707, 750 n. 331]; *Kifle-Thompson v. Board of Chiropractic Examiners* (2012) 208 Cal.App.4th 518, 530 [definition based on trial testimony of Dr. Stahl].)  *Kifle-Thompson* is the only case Dr. Cruz cites in which the definition of upcoding was based on evidence—Dr. Stahl's testimony—rather than pleadings or a law review article.  Dr. Stahl's proffered definition here—"bill[ing] for more work, judgment and risk than was truly performed (via CPT coding)"; "[b]illing for services never rendered"; and "represent[ing] via CPT coding . . . a higher level of service for reimbursement" than is warranted by the service provided—is sufficient to survive summary judgment.

We are similarly unpersuaded by Dr. Cruz's argument that she cannot be liable under the Act because GEICO has not established it incurred any damages.  As noted above, the Act does not require that a fraudulent claimant's scheme be successful to establish her liability; she need only knowingly present a false claim with the intent to defraud.  (See *People v. Cohen, supra*, 12 Cal.App.3d at p. 321; CALCRIM No. 2000.)  Dr. Cruz's reliance on cases involving alleged upcoding violations under the *federal* False Claims Act to support a contrary conclusion is misplaced.  "To state a claim under the

22

False Claims Act, a plaintiff must prove . . . 'the [defendant's] statement or conduct caused the government to pay out money or to forfeit money due.' " (*U.S. Kernan Hosp.* (D.Md. 2012) 880 F.Supp.2d 676, 680-681; see *U.S. ex rel. Hendow v. University of Phoenix* (9th Cir. 2006) 461 F.3d 1166, 1174.)  California law does not require this showing.

This is not to say that GEICO's alleged lack of damages is irrelevant.  Dr. Cruz might persuade the jury that her claimed lack of financial gain demonstrates she lacked the required fraudulent intent.  (See CALCRIM No. 2000 ["Someone *intends to defraud* if he or she intends to deceive another person either to cause a loss of (money[,]/ [or] goods[,]/ [or] services[,]/ [or] something [else] of value), or to cause damage to, a legal, financial, or property right."].)  On the other hand, even if Dr. Cruz incorrectly presented a higher-level CPT code but billed GEICO only the amount that corresponds to the lower-level treatment provided (as she argued to the trial court), GEICO might persuade the jury that she nonetheless intended to cause GEICO a loss—GEICO might not have approved payment for the lower-level treatment actually delivered, or might have approved only the higher-level treatment because it thought it was getting a bargain.  In any event, it is improper to resolve these competing inferences on summary judgment, as these are issues for a jury to decide.

## DISPOSITION

The judgment is reversed.  The matter is remanded with directions that the trial court vacate its order granting Dr. Cruz's motion for summary judgment and enter a new order denying summary adjudication of GEICO's statutory claim and granting summary

23

adjudication of GEICO's claims for conversion, fraud, intentional misrepresentation, negligent misrepresentation, constructive trust, equitable lien, and restitution. GEICO is entitled to its costs on appeal.

HALLER, Acting P. J.

WE CONCUR:

McINTYRE, J.

AARON, J.

24

COURT OF APPEAL - STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION ONE

THE PEOPLE ex rel. GOVERNMENT EMPLOYEES INSURANCE COMPANY et al.,
Plaintiffs and Appellants,

v.

JANICE S. CRUZ,
Defendant and Respondent.

**D067061**

**San Diego County No. 37-2013-00029878-CU-FR-NC**

THE COURT:

The opinion in this case filed January 22, 2016, was not certified for publication. It appearing the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c), the request pursuant to California Rules of Court, rule 8.1120(a), for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and

ORDERED that the words "Not to Be Published in the Official Reports" appearing on page 1 of said opinion be deleted and the opinion herein be published in the Official Reports.

Acting Presiding Justice

cc: All Parties