Filed 12/18/20

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SIX

| | |
|---|---|
| STATE FARM GENERAL INSURANCE COMPANY,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>OETIKER, INC.,<br><br>    Defendant and Respondent. | 2d Civ. No. B302348<br>(Super. Ct. No. 18CV-0046)<br>(San Luis Obispo County) |

In *Aas v. Superior Court* (2000) 24 Cal.4th 627, 632 (*Aas*), our Supreme Court held that homeowners were barred from proceeding with negligence claims for construction defects absent a showing of property damage or personal injury.  In 2002, the Legislature abrogated *Aas* when it passed the Right to Repair Act (the Act) (Civ. Code, § 895, et seq.).[1]

The Act codifies a comprehensive reform to construction defect litigation applicable to residential dwellings in California.  (Stats. 2002, ch. 722, § 3; *McMillin Albany LLC v.*

---

[1] Further unspecified statutory references are to the Civil Code.

*Superior Court* (2018) 4 Cal.5th 241, 246-247 (*McMillin*).) Among other things, "[t]he Act sets forth detailed statewide standards that the components of a dwelling must satisfy. It also establishes a prelitigation dispute resolution process that affords builders notice of alleged construction defects and the opportunity to cure such defects, while granting homeowners the right to sue for deficiencies even in the absence of property damage or personal injury." (*McMillin*, at p. 247.) It also provides an outside limit of 10 years for filing a lawsuit for latent construction defects. (§ 941.)

In *McMillin*, *supra*, 4 Cal.5th 241, a builder was sued for defective construction under multiple theories, based both on common law (e.g., negligence) and the Act. The plaintiffs later dismissed the statutory causes of action in an attempt to avoid the prelitigation dispute resolution requirements of the Act. Our Supreme Court rejected that attempt, holding that the Act was intended to displace the common law and was the "virtually exclusive remedy not just for economic loss but also for property damage arising from construction defects." (*Id.* at p. 247.)

Here, Oetiker raises the same argument, contending that the Act applies to bar State Farm's complaint. But unlike *McMillin*, here we are dealing with a lawsuit against an individual product manufacturer whose allegedly defective part failed after it was incorporated into the structure, causing damage to the residence. Although non-builders such as product manufacturers are subject to the Act under certain circumstances, the Act treats builders and non-builders differently. *McMillin* is therefore distinguishable.

Here we hold that as applied to non-builders such as Oetiker, the Act covers claims based on negligence and breach of

2

contract, but not those based on strict liability and breach of implied warranty. We accordingly reverse and remand with directions to allow the claims based on strict liability and implied warranty to proceed.[2]

## FACTUAL AND PROCEDURAL HISTORY

James and Jennifer Philson insured their residence with State Farm General Insurance Company (State Farm). Construction of their home was substantially completed, and a Notice of Completion recorded, in 2004.

Oetiker, Inc. was the manufacturer of a stainless steel ear clamp that was attached to plumbing pipes in the Philson's home. In 2016, significant water damage occurred at the home. The Philsons filed a claim under their policy, and State Farm paid the claim.

In 2018, State Farm brought a subrogation action against Oetiker to recover the amount State Farm paid the Philsons under their policy. State Farm alleged the home was "damaged by a water leak from the failure of a defective stainless steel ear clamp on a water PEX fitting" and that the clamp was "defective when it left the control of [Oetiker]." The complaint included causes of action for negligence, strict products liability, and breach of implied warranty.

Oetiker moved for summary judgment. It argued the Act's 10-year statute of repose for latent defects barred State Farm's lawsuit. (§ 941.) State Farm countered that the Act did not apply to its action because it alleged a defect only in a

_____

[2] The National Association of Subrogation Professionals filed an amicus curiae brief in support of State Farm's contentions.

3

"manufactured product" (i.e., the ear clamp). (§ 896, subd. (g)(3)(E).)

The trial court granted Oetiker's motion for summary judgment. The court found that "Oetiker has established that Plaintiff's claims for property damage . . . fall within Civil Code section 896(a)(14),(15), that the exception set forth in Civil Code section 896(g)(3)(E) does not apply, and that this action is therefore subject to the provisions of the Act." Thus, the court found the Act's 10-year statute of repose barred the action.

## DISCUSSION

State Farm contends the trial court erred when it granted the motion for summary judgment because the Act does not apply to its lawsuit. We agree that the Act does not apply to the strict liability and breach of implied warranty causes of action, but conclude otherwise as to the negligence cause of action.[3]

### *Standard of Review*

Summary judgment is appropriate "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) The moving party bears the initial burden of showing that the opposing party cannot establish one or more elements of the cause of action, or that there is an affirmative defense to it. (§ 437c, subd. (*o*); *Aguilar v. Atlantic Richfield Co.* (2001) 25 Cal.4th 826, 850 (*Aguilar*).) If the moving party makes one of the required

---

[3] Oetiker's request for judicial notice of the California Bill Analysis of Senate Bill 800 is granted. (Sen. Com. on Judiciary, Analysis of Sen. Bill No. 800 (2001-2002 Reg. Sess.) as amended Aug. 28, 2002.)

4

showings, the burden shifts to the opposing party to establish a triable issue of material fact. (*Aguilar*, at p. 850.)

Our review is de novo. (*Knapp v. Doherty* (2004) 123 Cal.App.4th 76, 84.) We liberally construe the opposing party's evidence and resolve all doubts in their favor. (*Lyle v. Warner Brothers Television Productions* (2006) 38 Cal.4th 264, 274.) We consider all evidence in the moving and opposition papers, except that to which objections were properly sustained. (*Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1037.)

### *Right to Repair Act*

The Act consists of five chapters. "Chapter 1 establishes definitions applicable to the entire title. (§ 895.) Chapter 2 defines standards for building construction. (§§ 896-897.) Chapter 3 governs various builder obligations, including the warranties a builder must [or may] provide. (§§ 900-907.) Chapter 4 creates a prelitigation dispute resolution process. (§§ 910-938.) Chapter 5 describes the procedures for lawsuits under the Act. (§§ 941-945.5.)" (*McMillin*, *supra*, 4 Cal.5th at p. 250.)

Section 896 is in Chapter 2. It provides that in "any action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction . . ., a builder, and *to the extent set forth in Chapter 4 . . .* [an] *individual product manufacturer . . .* shall, except as specifically set forth in this title, be liable for, and the claimant's claims or causes of action shall be limited to violation of, the following standards, except as specifically set forth in this title. This title applies to original construction intended to be sold as an individual dwelling unit." (§ 896, emphasis added.)

Section 896 lists the applicable standards for residential construction, including those "[w]ith respect to water issues." (§ 896, subd. (a).) Water issue standards require that the "lines and components of the plumbing system, sewer system, and utility systems shall not leak" (*id.* at subd. (a)(14)) and that the "[p]lumbing lines, sewer lines, and utility lines shall not corrode so as to impede the useful life of the systems" (*id.* at subd. (a)(15)).

Section 896 also includes exceptions to the Act. As relevant here, one exception provides: "This title does not apply in any action seeking recovery solely for a defect in a manufactured product located within or adjacent to a structure." (§ 896, subd. (g)(3)(E).) A "'manufactured product'" is defined as "a product that is completely manufactured offsite." (*Id.* at subd. (g)(3)(C).) Manufactured products include plumbing products and fixtures. (*Id.* at subd. (g)(3)(A).)

Section 897 states that the standards in section 896 were "intended to address every function or component of a structure. To the extent that a function or component of a structure is not addressed by these standards, it shall be actionable if it causes damage." (§ 897.)

As pertains to an "individual product manufacturer," section 936 (in Chapter 4) states that "[e]ach and every provision of the other chapters of this title appl[ies] . . . to the extent that . . . individual product manufacturers . . . caused, in whole or in part, a violation of a particular standard *as the result of a negligent act or omission or a breach of a contract* . . . . However, the negligence standard in this section does not apply to any . . . individual product manufacturer . . . with respect to claims for which strict liability would apply." (Emphasis added.)

6

Section 943 (in Chapter 5) discusses the exclusivity of the Act.  It provides that "except as provided in this title, no other cause of action for a claim covered by this title or for damages recoverable under Section 944 is allowed."  Section 944 discusses recoverable damages, which include "damages for the reasonable value of repairing any violation of the standards," "the reasonable cost of repairing and rectifying any damages resulting from the failure of the home to meet standards," and "the reasonable cost of removing and replacing any improper repair by the builder." (§ 944.)

### Application of the Act

State Farm contends the Act was not intended to preclude common law products liability claims "waged solely against the product manufacturer and related solely to the defective product."  Whether the Act applies to State Farm's lawsuit is a question of statutory interpretation, which we review de novo.  (*Bruns v. E-Commerce Exchange, Inc.* (2011) 51 Cal.4th 717, 724.)  Our fundamental task is to ascertain the Legislature's intent.  (*Pacific Palisades Bowl Mobile Estates, LLC v. City of Los Angeles* (2012) 55 Cal.4th 783, 803 (*Pacific Palisades*).)  We begin with the statute's words, giving them their plain, commonsense meanings.  (*Bruns v. E-Commerce Exchange, Inc.*, *supra*, at p. 724.)  We interpret the words in the context of related statutes, harmonizing them whenever possible.  (*Mejia v. Reed* (2003) 31 Cal.4th 657, 663.)  If the statutory language is ambiguous, we may examine the legislative history to determine the Legislature's intent.  (*Pacific Palisades*, *supra*, at p. 803.)

### Violation of the Standards

To determine whether the Act applies, we must first decide if the nature of the defect alleged here constitutes a

7

violation of the section 896 standards. It does. The standards require that the "lines and components of the plumbing system . . . shall not leak" (§ 896 at subd. (a)(14)) and that the "[p]lumbing lines . . . shall not corrode so as to impede the useful life of the systems" (*id.* at subd. (a)(15)).

The ear clamp at issue was installed on a PEX fitting (a type of plumbing line fitting). "[L]ines and components of a plumbing system" include an ear clamp attached to a plumbing line fitting. (See *Kohler Co. v. Superior Court* (2018) 29 Cal.App.5th 55, 60 (*Kohler*) [pressure valves and mixer caps were plumbing components subject to the Act].) The ear clamp is also a "function or component of a structure" that allegedly caused the property damage. (§ 897.) State Farm alleges here that the ear clamp was defective and caused the property damage.

### *Manufactured Product Exception*

Next, we consider State Farm's argument that section 896, subdivision (g)(3)(E)'s exception for "manufactured product" applies. We conclude the exception does not apply here.

Section 896, subdivision (g)(3)(E) excludes "any action seeking recovery *solely* for a defect in a manufactured product located within or adjacent to a structure." (Emphasis added.) While it is undisputed that an ear clamp is a manufactured product, the exception does not apply when a defective product causes a violation of the section 896 standards. (*Greystone Homes, Inc. v. Midtec, Inc.* (2008) 168 Cal.App.4th 1194, 1222 (*Greystone*); *Kohler*, *supra*, 29 Cal.App.5th at p. 63.)

In *Greystone*, a homebuilder (Greystone) brought an equitable indemnity action against a manufacturer of plumbing fittings (Midtec). (*Greystone*, *supra*, 168 Cal.App.4th at p. 1202.) Greystone alleged that Midtec violated section 896 standards

when it produced defective fittings that Greystone used to construct homes. (*Ibid*.) Midtec argued the Act did not apply because it "'specifically *excludes* from the entire title product liability claims that are based solely on a claim of a defective product.'" (*Id.* at p. 1221, emphasis in the original.)

The Court of Appeal disagreed with Midtec and concluded that a "claim—such as Greystone's equitable indemnity claim—that a defect in a manufactured product constitutes a *violation of the standards established in section 896* is not an 'action seeking recovery *solely* for a defect in a manufactured product.' [Citations.]" (*Greystone, supra*, 168 Cal.App.4th at p. 1222, emphasis in original.) The court concluded that section 896, subdivision (g)(3)(E) was "intended to bar actions in which the claimant seeks to recover for a defect in a product that *does not* violate one of the standards set forth in section 896." (*Ibid.*, emphasis in the original.)

Here, State Farm did not seek recovery solely for the cost of the ear clamp. Instead, it sought recovery for the damages resulting from the defective ear clamp (i.e., the water leak). Therefore, the "manufactured product" exception does not apply.

### Product Manufacturer's Liability Under the Act

We next determine whether the Act precludes State Farm's non-statutory causes of action for negligence, strict liability, and breach of implied warranty. We conclude the negligence cause of action is barred, but not the strict liability and implied warranty causes of action.

Our Supreme Court in *McMillin, supra*, 4 Cal.5th 241, examined the extent to which the Act displaces common law causes of action such as those pled here. In *McMillin*, homeowners sought to recover economic loss and property

9

damage from the builder (McMillin). They alleged common law causes of action for negligence, strict products liability, breach of contract, and breach of warranty. (*McMillin*, *supra*, 4 Cal.5th at p. 247.) The homeowners also alleged a statutory cause of action for violation of section 896 standards, but later dismissed this cause of action to avoid the Act's prelitigation dispute procedures. (*Id.* at p. 248.)

The court concluded the homeowners could not avoid the Act's prelitigation procedures. It held that except for certain causes of action that were expressly excluded in the Act, the Legislature intended to make "the Act the virtually exclusive remedy" for economic loss and property damage arising from residential construction defects. (*Id.* at p. 247.)

In so holding, the court reasoned that "the text and legislative history reflect a clear and unequivocal intent to supplant common law negligence and strict product liability actions with a statutory claim under the Act." (*McMillin*, *supra*, 4 Cal.5th at p. 249.) The court observed that the plain language of section 896 states "the provision applies to 'any action' seeking damages for a construction defect, not just any action under the title. [Citation.] This suggests an intent to create not merely *a* remedy for construction defects but *the* remedy." (*Id.* at p. 250, emphasis in original.)

Section 896 also states that "claims or causes of action shall be limited to violation of . . . the following standards, except as specifically set forth in this title." The court observed that this "express language of limitation means that a party seeking damages for a construction defect may sue for violation of these standards, and *only* violation of these standards, unless the Act provides an exception. This clause evinces a clear intent to

10

displace, in whole or in part, existing remedies for construction defects." (*McMillin*, at p. 250, emphasis in original.)

The court also examined sections 943 and 944, which govern the exclusivity of the Act and recoverable damages. The court observed that "section 944 identifies what damages *may* be recovered in an action under the Act, and section 943 establishes that such damages *may only* be recovered in an action under the Act," unless there is an express exception. (*McMillin*, *supra*, 4 Cal.5th at p. 251, emphasis in the original.) These sections expressly include economic loss and property damage resulting from construction defects as categories of damages that may only be recovered in an action under the Act. (*Id.* at pp. 252-253.) The court noted that where the Legislature intended to preserve common law claims, it omitted that theory of recovery in section 944, and/or expressly exempted such common law claims from the Act. (*Id.* at p. 252 [personal injury damages not listed as a category recoverable under the Act (§ 944) and are included in the list of claims exempt from the Act (§ 931)].)

The court concluded that regardless of how the claims were pled, the Act applied because the "suit remains an 'action seeking recovery of damages arising out of, or related to deficiencies in, the residential construction' of plaintiffs' homes (§ 896), and McMillin's liability under [the] negligence and strict liability claims depends on the extent to which it violated the standards." (*McMillin*, *supra*, 4 Cal.5th at pp. 258-259.)

Oetiker relies on *McMillin*, *supra*, 4 Cal.5th at page 247, to argue that because State Farm alleged a violation of the section 896 standards, the Act precludes its entire action. State Farm counters that *McMillin* is distinguishable because that case

11

involved a lawsuit against a builder, not a product manufacturer. We agree, in part, with both parties.

A builder's liability under the Act is different from a non-builder's liability. Section 896 extends liability under the Act to an individual product manufacturer only "*to the extent set forth in Chapter 4.*" (§ 896, emphasis added.) Section 936 (in Chapter 4), specifies that "[e]ach and every provision of the other chapters of this title apply to . . . individual product manufacturers . . . to the extent that [they] caused, in whole or in part, a violation of a particular standard *as the result of a negligent act or omission or a breach of contract.*" (§ 936, emphasis added.)

Taken together, sections 896 and 936 state that a product manufacturer is liable under the Act only where its negligence or breach of contract caused a violation of the standards. (See *Greystone*, *supra*, 168 Cal.App.4th at p. 1216; *Gillotti v. Stewart* (2017) 11 Cal.App.5th 875, 899; *Acqua Vista Homeowners Assn. v. MWI, Inc.* (2017) 7 Cal.App.5th 1129, 1142-1143 (*Acqua Vista*).) Section 936 makes clear that where a product manufacturer is liable under the Act, "[e]ach and every provision" of the Act (with the exception of the prelitigation dispute resolution provisions of Chapter 4) applies—which includes the provisions making the Act the exclusive means for recovery for specified damage claims.

State Farm is therefore precluded from bringing its negligence cause of action, which was based on the allegation that the property damage resulted from "a water leak from the failure of" the ear clamp. Because State Farm alleged that Oetiker's negligence in manufacturing the product caused a violation of the Act (§ 936), and it sought recovery for the

12

resulting property damage (§§ 943, 944), State Farm was "limited" to a statutory cause of action. (§ 896; *McMillin*, *supra*, 4 Cal.5th at p. 250.)

We reach a different conclusion with respect to State Farm's strict liability and breach of implied warranty causes of action. Nothing in the Act restricts a homeowner or its insurer from bringing causes of action which fall outside of the Act. (See *McMillin*, *supra*, 4 Cal.5th at p. 259 [holding does not apply to causes of action "placed outside the reach of the Act's exclusivity"].) For actions against non-builders, causes of action not based on negligence or breach of contract fall outside of the Act. (See *Acqua Vista*, *supra*, 7 Cal.App.5th at pp. 1140-1143 [a statutory cause of action requires proof of a non-builder's negligence or breach of contract].)

Moreover, as *McMillin* recognized, the Act "leaves the common law undisturbed in some areas, expressly preserving" certain causes of action. (*McMillin*, *supra*, 4 Cal.5th at p. 249.) "To the extent possible, we construe statutory enactments as consonant with existing common law and reconcile the two bodies of law." (*Ibid.*; *California Assn. of Health Facilities v. Department of Health Services* (1997) 16 Cal.4th 284, 297 [statutes are generally interpreted to "'avoid conflict with common law rules'" unless the language clearly intends to depart from it].)

The Act expressly preserves common law strict liability claims. (§ 936; *Acqua Vista*, *supra*, 7 Cal.App.5th at pp. 1143-1144.) The last sentence of section 936 states that "the negligence standard in this section does not apply to any . . . individual product manufacturer . . . with respect to claims for which strict liability would apply." In *Acqua Vista*, the Court of Appeal construed section 936 "as providing that the negligence

13

standard specified in the first sentence of section 936 does *not* apply to *common law strict liability* claims against the specified nonbuilder entities." (*Acqua Vista*, at p. 1143, emphasis in original.) The court noted that its interpretation of the last sentence of section 936 was "strongly supported by the similarity of that sentence to other provisions in the Act that clearly reflect the Legislature's intent to limit the Act's effect on the *common law*. The Act repeatedly refers to common law claims—often within the final sentence of a section as in section 936." (*Id.* at pp. 1143-1144, emphasis in original.)

The plaintiff in *Acqua Vista* argued that the last sentence of section 936 means that the Act's standard of liability (§ 942) applies to claims that would have been common law strict liability claims. (*Acqua Vista*, *supra*, 7 Cal.App.5th at pp. 1147-1148.) The court rejected this interpretation. It explained that under the plaintiff's interpretation, the Act "'places a [non-builder] "on par," with a builder'" and that "the standard of liability for a claim brought pursuant to the Act would be determined by the standard of liability that would have applied if the claim had been brought at common law." (*Id.* at pp. 1144, 1149, emphasis omitted.) Such an interpretation was "entirely *inconsistent*" with the statute's text and structure. (*Id.* at p. 1144, emphasis in original.)

In contrast, interpreting the last sentence of section 936 to expressly preserve common law strict liability claims against non-builders is "entirely consistent" with the statute's differing standards of liability for builders (§ 896) and non-builders (see the first sentence of § 936). (*Ibid.*) We agree with *Acqua Vista* and conclude that the last sentence of section 936

14

excludes from the Act common law strict liability claims against a product manufacturer.[4]

And although there is no express provision preserving the breach of implied warranty cause of action, we conclude it also falls outside the Act. Section 936 states that a non-builder may be liable under the Act based on theories of negligence *or breach of contract*. Although a breach of implied warranty claim is rooted in contract theory (*Windham at Carmel Mountain Ranch Assn. v. Superior Court* (2003) 109 Cal.App.4th 1162, 1168), claims for breach of implied warranty and breach of contract are distinct and separate. Breach of implied warranty and strict products liability causes of action are similar—under both theories, a manufacturer is liable if the product is defective and no proof of negligence or fault is required. (See *Greenman v. Yuba Power Products, Inc.* (1963) 59 Cal.2d 57, 63-64 [action for strict products liability rooted in warranty law].) Moreover, if the Legislature intended "breach of contract" to mean "breach of implied warranty," it could have expressly said so. It is not our task to speculate about the meaning of a word or phrase, or insert language into legislation. (*Mikkelsen v. Hansen* (2019) 31 Cal.App.5th 170, 181.)

### Statute of Repose

Because the Act's statute of repose applies, State Farm's negligence cause of action is time-barred.

---

[4] We reject Oetiker's argument that State Farm's reliance on *Acqua Vista* was "incorrect, outdated, and inapplicable" because it was decided before *McMillin*. *Acqua Vista* was not overruled by *McMillin*. The cases are also distinguishable because *Acqua Vista* involved a lawsuit against a non-builder (i.e., a material supplier), whereas *McMillin* involved a lawsuit against the builder/developer.

15

Section 941 provides that "no action may be brought to recover under this title more than 10 years after substantial completion of the improvement but not later than the date of recordation of a valid notice of completion." Thus, section 941 "'imposes an "absolute requirement" that a lawsuit to recover damages for latent defects be brought within 10 years of substantial completion of the construction, whether or not the defect was or could have been discovered within that period.'" (*Hensel Phelps Construction Co. v. Superior Court* (2020 44 Cal.App.5th 595, 613-614.)

Here, a Notice of Completion of the home was recorded in 2004. State Farm filed its complaint more than 10 years later. The statute of repose thus barred its negligence cause of action. Accordingly, State Farm did not carry its burden to establish a triable issue of material fact as to that cause of action.

But even though the trial court correctly determined the negligence cause of action is time-barred, the court erred when it granted the motion for summary judgment because viable causes of action remain. When Oetiker moved for summary judgment, it did not bring an alternative motion for summary adjudication. (Code of Civ. Proc., § 437c, subd. (f)(1).) Accordingly, the motion should have been denied. (See *People ex rel. Government Employees Ins. Co. v. Cruz* (2016) 244 Cal.App.4th 1184, 1197 [trial court erroneously grants summary judgment when a factual dispute exists but affects fewer than all causes of action, and reviewing court lacks authority to enter an order granting summary adjudication of the unaffected causes of action unless the moving party alternatively moved for summary adjudication].)

16

## DISPOSITION

The judgment is reversed.  The matter is remanded to the trial court with directions to vacate the order granting summary judgment without prejudice to a motion for summary adjudication on the negligence cause of action.  In the interest of justice, the parties shall each bear their own costs pending the final outcome of this matter.  (Cal. Rules of Court, rule 8.278 (a)(5).)

CERTIFIED FOR PUBLICATION.


TANGEMAN, J.


We concur:


GILBERT, P. J.


YEGAN, J.

17

Ginger E. Garrett, Judge

Superior Court County of San Luis Obispo

_____

Watkins & Letofsky, Jeffrey A. Korinko, Michael Long; Grotefeld Hoffmann, Jordan Everakes and Daniel W. Berglund for Plaintiff and Appellant.

Williams|Palecek Law Group, Jason P. Williams; Noma Law Firm and Sally Noma for National Association of Subrogation Professionals, Amici Curiae on behalf of Plaintiff and Appellant.

Selman Breitman, Elaine K. Fresch and Melanie M. Smith for Defendant and Respondent.