Filed 11/7/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SIM CARLISLE HOFFMAN,<br><br>    Petitioner,<br><br>        v.<br><br>THE SUPERIOR COURT OF ORANGE COUNTY,<br><br>    Respondent;<br><br>THE PEOPLE,<br><br>    Real Party in Interest. | G054414<br><br>(Super. Ct. No. 14CF0243)<br><br>O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, Richard M. King, Judge.  Petition denied.

Moss Law Group, Richard A. Moss, and William C. Fleming, Jr., for Petitioner.

No appearance for Respondent.

Tony Rackauckas, District Attorney, and Yvette Patko, Deputy District Attorney for Real Party in Interest.

\*        \*        \*

The issue in this writ proceeding is whether an information may allege a single offense in a single count, but describe within that count multiple discrete acts, each of which constitute the charged offense. Here, the People have alleged 121 counts of healthcare insurance fraud. (Pen. Code, § 550, subds. (a)(5), (a)(6).)[1] Each count identifies multiple patient files and a timeframe that spans years. Defendant demurred to the information. The court overruled the demurrer and defendant then filed the present writ petition.

We conclude the information is proper and will deny the writ petition. Each count alleges a single offense. Any complications, or undue prejudice to defendant, arising from the fact that multiple discrete acts may constitute the charged offense in each count are adequately dealt with by a unanimity instruction at trial, or by other tools at the court's disposal, such as a severance of counts, or trial continuances where appropriate. A demurrer on these grounds is not the proper vehicle to address defendant's concerns. The court correctly overruled the demurrer.

FACTS

In May 2011, defendant was indicted on 884 felony counts alleging healthcare insurance fraud in violation of section 550. That indictment was ultimately dismissed in 2013 on the ground that the prosecution had failed to provide exculpatory evidence to the grand jury.

Rather than proceed by indictment, in January 2014, the People filed a felony complaint. The complaint alleged 159 counts of insurance fraud. One year and one-half later — after four amendments and two demurrers — the people filed a fifth

---

[1] All statutory references are to the Penal Code.

amended complaint, alleging violations of section 550, subdivision (a)(5) (33 counts), subdivision (a)(6) (135 counts), and subdivision (a)(7) (one count).

The preliminary hearing began on September 1, 2015, and ended on November 23 of that year. The resulting transcript spanned over 2,300 pages. Over 53,000 pages of documentary evidence was submitted. During the preliminary hearing, the complaint was amended again. This final amendment contained 102 counts alleging a violation of section 550, subdivision (a)(6), and one count alleging a violation of subdivision (a)(5).[2] Defendant was held to answer on all 103 counts.

Afterwards the People filed an information alleging the same counts. One exemplar count will suffice to convey the gist of the charges. Count 2 alleged: "On or about and between February 16, 2012, and April 08, 2013, in violation of Section 550(a)(6) of the Penal Code (MEDICAL INSURANCE FRAUD), a FELONY, SIM CARLISLE HOFFMAN and his company: SOUTHERN CALIFORNIA MEDICAL DIAGNOSTIC GROUP INC., (TIN: 27-3236269), with the intent to defraud, did knowingly and unlawfully make and cause to be made a false and fraudulent claim to COUNTY OF SAN BERNARDINO for payment of a health care benefit in an amount exceeding nine hundred fifty dollars ($950), and did aid and abet, solicit, and conspire with another to do the same (3d Imaging/MRI)." Defendant demurred, and the court sustained the demurrer with leave to amend. The court found it "appropriate in this case . . . to require the People to set forth in the accusatory pleadings the acts relied upon for each count rather than by some informal specifications . . . which may or may not be effective." The court granted leave to amend "to elect the acts on which [the People] intend to rely on for each count."

---

[2] Section 550, subdivision (a)(5), makes it unlawful to "[k]nowingly prepare, make, or subscribe any writing, with the intent to present or use it, or to allow it to be presented, in support of any false or fraudulent claim." Section 550, subdivision (a)(6), makes it unlawful to "[k]nowingly make or cause to be made any false or fraudulent claim for payment of a health care benefit."

3

In response, the People filed an amended information, which is at issue here. The amended information contains 121 counts: 120 counts of violating section 550, subdivision (a)(6), and one count of violating subdivision (a)(5). Unlike the prior information, the amended information, for each count, included both patient names and references to the preliminary hearing exhibit numbers containing the evidence relevant to the particular offense. To take the same example as the original information, the amended information alleged count 2 as follows: "On or about and between February 16, 2012 and April 08, 2013, in violation of Section 550(a)(6) of the Penal Code (MEDICAL INSURANCE FRAUD), a FELONY, SIM CARLISLE HOFFMAN and his company: SOUTHERN CALIFORNIA MEDICAL DIAGNOSTIC GROUP INC., (TIN: 27-3236269), with the intent to defraud, did knowingly and unlawfully make and cause to be made a false and fraudulent claim to COUNTY OF SAN BERNARDINO for payment of a health care benefit in an amount exceeding nine hundred fifty dollars ($950), and did aid and abet, solicit, and conspire with another to do the same; to wit: By adding an additional charge for 3d MRI under CPT Code 76375, to each healthcare claim submitted for the following workers compensation patients: [10 names listed]. (PH Exhibit #6)."

The patient names and preliminary hearing exhibit numbers were not new. They were provided to defendant in a chart summarizing the exhibits during the preliminary examination (this was the informal method the trial court had referenced in its demurrer ruling). The amended information essentially incorporated the chart into the information itself.

Defendant demurred to counts 1 through 3, 5 through 12, 14 through 39, 41 through 50, 52 through 69, 71 through 95, and 97 through 121 of the amended information. This time the court overruled the demurrer. It found notice to be adequate, and concluded the People were permitted to allege multiple acts that form the basis of each count. It cautioned, however, that there was still work to be done before setting a trial date to ensure the defendant had clarity on what he would need to defend against at

4

trial: "The court intends to have a pretrial or multiple pretrials to get this case ready for trial which is going to include the People identifying which witnesses and offers of proof as it relates to counts. So there is going to be work done because I'm going to make sure that when the People answer ready, the defense is going to be ready to defend the charges in front of the jury."

In response, defendant filed the present petition for a writ of mandate directing the court to sustain the demurrer. We initially summarily denied the petition. The California Supreme Court granted review and transferred the case to us with instructions to issue an order to show cause.

DISCUSSION

Defendant contends the court erred in overruling the demurrer to the amended information. "'"[A] demurrer raises an issue of law as to the sufficiency of the accusatory pleading, and it tests only those defects appearing on the face of that pleading." [Citation.]' [Citations.] On appeal, we review the order overruling defendant's demurrer de novo." (*People v. Osorio* (2015) 235 Cal.App.4th 1408, 1412.) Before addressing defendant's specific contentions, we begin by setting forth the statutory framework governing criminal pleadings.

"The accusatory pleading must contain: [¶] 1. The title of the action, specifying the name of the court to which the same is presented, and the names of the parties; [¶] 2. A statement of the public offense or offenses charged therein." (§ 950.) "In charging an offense, each count shall contain, and shall be sufficient if it contains in substance, a statement that the accused has committed some public offense therein specified. Such statement may be made in ordinary and concise language without any technical averments or any allegations of matter not essential to be proved. It may be in the words of the enactment describing the offense or declaring the matter to be a public

5

offense, or in any words sufficient to give the accused notice of the offense of which he is accused. In charging theft it shall be sufficient to allege that the defendant unlawfully took the labor or property of another." (§ 952.) "The precise time at which the offense was committed need not be stated in the accusatory pleading, but it may be alleged to have been committed at any time before the finding or filing thereof, except where the time is a material ingredient in the offense." (§ 955.) "Words used in a statute to define a public offense need not be strictly pursued in the accusatory pleading, but other words conveying the same meaning may be used." (§ 958.)

"The accusatory pleading is sufficient if it can be understood therefrom: [¶] 1. That it is filed in a court having authority to receive it, though the name of the court be not stated. [¶] 2. If an indictment, that it was found by a grand jury of the county in which the court was held, or if an information, that it was subscribed and presented to the court by the district attorney of the county in which the court was held. [¶] 3. If a complaint, that it is made and subscribed by some natural person and sworn to before some officer entitled to administer oaths. [¶] 4. That the defendant is named, or if his name is unknown, that he is described by a fictitious name, with a statement that his true name is to the grand jury, district attorney, or complainant, as the case may be, unknown. [¶] 5. That the offense charged therein is triable in the court in which it is filed, except in case of a complaint filed with a magistrate for the purposes of a preliminary examination. [¶] 6. That the offense was committed at some time prior to the filing of the accusatory pleading." (§ 959.)

Witkin provides a helpful historical context for these simplified pleading rules. "Early criminal pleading was lengthy, particular, detailed, and technical, and often led to reversal for variance despite convincing evidence of guilt at the trial. [Citations.] The justification for particularity and detail was fair notice to the defendant of the circumstances of the crime where the charge was made after a secret session of the grand jury or an unreported preliminary examination before the committing magistrate."

6

"Courts and legislatures eventually broke away from this traditional approach [citations], and California's statutory reform came in 1927. This gave the defendant the right to a transcript of the evidence taken before the grand jury or at the preliminary examination [citations], thus eliminating the need for detailed specifications in the indictment or information. The Legislature also established the rule of simplified pleading for an indictment, information, or complaint, in one basic statute." (4 Witkin & Epstein,, Cal. Criminal Law (4th ed. 2012) Pretrial Proceedings, § 208, p. 468)

These simplified pleading rules are still subject to due process requirements. "Due process of law requires that an accused be advised of the charges against him in order that he may have a reasonable opportunity to prepare and present his defense and not be taken by surprise by evidence offered at his trial." (*In re Hess* (1955) 45 Cal.2d 171, 175.) However, "an otherwise proper pleading may . . . fail to afford due process notice" only "in unusual circumstances . . . ." (*People v. Lucas* (1997) 55 Cal.App.4th 721, 737.) As our high court explained in *People v. Jennings* (1991) 53 Cal.3d 334, "Under modern pleading procedures, notice of the particular circumstances of an alleged crime is provided by the evidence presented to the committing magistrate at the preliminary examination, not by a factually detailed information." (*Id*. at p. 358; see *People v. Butte* (2004) 117 Cal.App.4th 956, 959 ["criminal procedure today provides a defendant with numerous means to obtain notice of the charges against him, including the information and the preliminary examination. These procedural devices, when properly used, are sufficient to preserve the defendant's due process right to notice"].) As Justice Sims wrote in an influential concurring opinion in *People v. Gordon* (1985) 165 Cal.App.3d 839 (conc. opn. of Sims, J.), disapproved on other grounds by *People v. Frazer* (1999) 21 Cal.4th 737, 765, and in turn disapproved on other grounds by *Stogner v. California* (2003) 539 U.S. 607, "These rules make it clear that an information plays a limited but important role: it tells a defendant what *kinds* of offenses he is charged with (usually by reference to a statute violated), and it states the *number* of offenses

7

(convictions) that can result from the prosecution. But the time, place and circumstances of charged offenses are left to the preliminary hearing transcript; it is the touchstone of due process notice to a defendant." (*Gordon*, at p. 870; see *People v. Jones* (1990) 51 Cal.3d 294, 311 [noting that several cases have cited Justice Sims's concurrence].)

Viewing the amended information against this backdrop, we first observe that it contains more information than is necessary to satisfy the basic statutory pleading requirements. Each count identifies the offense, the victim (for most counts, an insurance provider), the type of alleged fraudulent claim, the specific time frame during which the offense occurred, the patient files relevant to the offense, and the preliminary hearing exhibit number containing the evidence to support the count. Under sections 948 through 959, it would have been sufficient to simply state: Defendant did knowingly prepare, make, or subscribe a writing, with the intent to present or use it, or allow it to be presented, in support of a false and fraudulent claim. (See § 550, subd. (a)(5).) Or, Defendant did knowingly make or cause to be made a false or fraudulent claim for payment of a health care benefit. (See § 550, subd. (a)(6).) Due process may require that the victim and type of fraud be identified (which was the case in the original information). And whether or not due process does so require, we believe it to be a best practice where there are so many counts involved. But it was certainly unnecessary, under the statutory framework, to identify precise time frames, patient files, or preliminary hearing exhibit numbers. That was the function of the preliminary hearing.

With that basic assessment, we turn to defendant's contentions.


*The Information Does Not Violate Section 954*

Defendant first contends that section 954 prohibits the People from alleging multiple acts, each of which constitute a distinct offense, in a single count. Because each count describes multiple patient files over an extended timeframe, and because insurance fraud is completed upon the preparation of a fraudulent document (§ 550, subd. (a)(5)), or

8

the submission of a fraudulent claim (subdivision § 550, subd. (a)(6)), defendant contends each count contains multiple discrete offenses. (*See People ex rel. Government Employees Ins. Co. v. Cruz* (2016) 244 Cal.App.4th 1184, 1193 [a violation of section 550 "'is complete when a false claim for payment of loss is presented to an insurance company or a false writing is prepared or presented with intent to use it in connection with such a claim whether or not anything of value is taken or received'"].)

Section 954 provides, "*An accusatory pleading may charge two or more different offenses* connected together in their commission, or different statements of the same offense or two or more different offenses of the same class of crimes or offenses, *under separate counts*, and if two or more accusatory pleadings are filed in such cases in the same court, the court may order them to be consolidated. The prosecution is not required to elect between the different offenses or counts set forth in the accusatory pleading, but the defendant may be convicted of any number of the offenses charged, and each offense of which the defendant is convicted must be stated in the verdict or the finding of the court; provided, that the court in which a case is triable, in the interests of justice and for good cause shown, may in its discretion order that the different offenses or counts set forth in the accusatory pleading be tried separately or divided into two or more groups and each of said groups tried separately. An acquittal of one or more counts shall not be deemed an acquittal of any other count." (Italics added.)

Focusing on the italicized language, defendant contends, essentially, that by permitting two offenses to be charged in separate counts, the statute impliedly prohibits describing multiple acts in a single count. Put another way, defendant contends section 954 prohibits the practice of duplicity, and the information here violates that prohibition. (20A Cal.Jur.3d (2017) Criminal Law: Pretrial Proceedings § 826 ["A duplicitous count of an accusatory pleading joins two or more distinct and separate offenses in the same count"].)

9

We conclude the amended information does not suffer from duplicity. Nearly all the duplicity cases we have discovered are from the late 1800s or early 1900s. There is a reason for this. Section 954 was enacted in 1872. Its original form differed markedly from the current version. The 1872 version stated: "The indictment must charge *but one offense*, and in one form only, except that when the offense may be committed by the use of different means, the indictment may allege the means in the alternative." (Italics added.) Thus, in *People v. Alibez* (1875) 49 Cal. 452, 453, the Supreme Court stated, "The statute (Penal Code, 954), under which the proceedings in question were had, distinctly provides that the indictment 'must charge but one offense,' while it is self-evident that the indictment here, charging the defendant, as it does, with the murder of three persons, necessarily charges three offenses."

In 1915, section 954 was rewritten entirely. Crucially, the revised section 954 did an about face on the single-offense limitation. Instead, as in the current version, the 1915 version permitted the charging of "two or more" different offenses in different counts. This had major implications for the concept of duplicity. Whereas language in a charging document describing a separate offense was entirely improper before, after 1915 it was proper to include multiple offenses in a single charging document, albeit in separate counts. Thus in 1921 our high court in *People v. Steelik* (1921) 187 Cal. 361, found that where an indictment had duplicitously charged multiple offenses it was harmless in an appeal from a judgment after trial: "Assuming that the indictment is sufficiently definite and certain in charging several different offenses, no injury resulted to the defendant by reason of a failure to separate the charge into separate counts. Indeed, he is the gainer thereby, as only one penalty can be imposed." (*Id.* at p. 370.)

In the context of these legal developments, we conclude the counts in the present information all set forth but a single offense. Count 2, for example, alleges defendant made "*a* false and fraudulent claim [singular] to COUNTY OF SAN BERNARDINO for payment of *a* health care benefit [singular]." (Italics added.) While

10

it goes on to refer to "each healthcare claim submitted for the following workers compensation patients: [list of patients]," as we have stated above, that information is surplusage. The basic allegation of the offense is a single claim for a single benefit. As it turns out, for each count, the People have evidence of multiple acts that, if credited and unrebutted, would satisfy the elements of the offense. However, that fact affords no basis for a demurrer. Rather, any complications arising from these circumstances are remedied by a unanimity instruction at trial, which we address in greater detail below.

*Defendant Was Not Entitled to an Election*

This brings us to defendant's second contention, which is that pursuant to *People v. Salvato* (1991) 234 Cal.App.3d 872 (*Salvato*), defendant is entitled to force the People to proceed on but a single act for each count. We note preliminarily, that the *Salvato* decision addressed whether the defendant was entitled to an election by the prosecutor at the beginning of trial. It did not address the issue we need to decide — whether the information, as pleaded here, withstands demurrer. (*People v. Alvarez* (2002) 27 Cal.4th 1161, 1176 ["[I]t is axiomatic that cases are not authority for propositions not considered"].) Further, for the reasons that follow, we conclude *Salvato* was wrongly decided, at least to the extent its rationale would apply to forcing an election at the demurrer stage.

In *Salvato* the defendant was found guilty of, inter alia, criminal threats (§ 422) and dissuading a witness by threat of violence (§ 136.1, subd. (c)(1)). (*Salvato*, *supra*, 234 Cal.App.3d at p. 876.) Each count alleged a time period of several months, and the evidence at trial disclosed multiple threats that would satisfy the elements of the offenses. (*Id.* at pp. 877-878.) The issue in the case was "whether the defendant in a criminal case is entitled, upon demand at the start of trial, to have the prosecution elect which of several distinct acts is relied upon for each individual charge." (*Id.* at p. 875.)

11

In concluding defendant is entitled to make such a demand, the *Salvato* court relied heavily on *People v. Castro* (1901) 133 Cal. 11 (*Castro*). In *Castro* the defendant was charged with a single count of statutory rape, but the victim testified to four separate acts of intercourse. The *Castro* court held, "The state, at the commencement of trial, should have been required to select the particular act upon which it relied to make good the allegation of the information." (*Id.* at p. 13.) The *Salvato* court noted, "*Castro* has never been overruled" and "[n]o later case holds that an election is not required if requested." (*Salvato*, *supra*, 234 Cal.App.3d at p. 879.)

In reaching that conclusion, the *Salvato* court overlooked a critical legal development since the *Castro* decision — the rewriting of section 954 in 1915. *Castro* was decided at a time when only one offense could be alleged. It made sense, then, that where multiple offenses were disclosed, the prosecution would be forced to elect a single offense. Since 1915, however, the prosecution has been entitled to proceed on multiple offenses.

Moreover, where evidence of all of the conduct at issue was presented at the preliminary hearing, the practical result of forcing the prosecution to proceed on a single act among many at the demurrer stage is to force the prosecution to amend the information, as the prosecution is entitled to amend the information to include any offenses disclosed by the evidence at the preliminary hearing. (§ 1007 ["If the demurrer is sustained, the court must, if the defect can be remedied by amendment, permit the . . . information to be amended"], § 1009 ["An indictment or accusation cannot be amended so as to change the offense charged, *nor an information so as to charge an offense not shown by the evidence taken at the preliminary examination*" (italics added)].) The practical implication of forcing an election at the demurrer stage, therefore, is simply to force the People to add additional counts to the information. That does not benefit the defendant at all — to the contrary, it only increases his potential punishment.

12

The *Salvato* court went on to cite additional reasons for its holding, but we find none of those reasons persuasive. First, "Where the prosecutor is aware that the evidence he or she plans to present will include several distinct acts, any one of which might arguably constitute the crime charged, there is no reason he or she should be allowed to play 'hide the ball' with the defense." (*Salvato, supra*, 234 Cal.App.3d at p. 880.) Provided the evidence is disclosed at the preliminary hearing, however, the defendant is fully apprised of the acts he must defend against. Moreover, the prosecutor is not entitled to proceed on a factual theory not disclosed by the preliminary hearing. (*People v. Burnett* (1999) 71 Cal.App.4th 151, 165-166.) There is no hiding the ball.

Second, "preliminary hearing testimony is frequently less specific than testimony at trial in showing particular events." (*Salvato*, *supra*, 234 Cal.App.3d at p. 881.) While that might be true in a general sense, where the evidence is truly inadequate to convey the circumstances of the alleged offense, defendant's remedy is a section 995 motion.

"Third, allowing the prosecution to proceed without an election, where one is demanded and is possible, unfairly prejudices the defense, even when all the acts have been revealed in a preliminary examination. In the absence of an election, evidence of all the potentially criminal acts is admissible without meeting the requirements for introduction of uncharged bad acts. [Citations.] The defense may neither seek their exclusion nor request an instruction on the limited purpose for which they may be considered." (*Salvato, supra,* 234 Cal.App.3d at p. 881.) The flaw in this analysis is that the various acts are not *uncharged*. Moreover, as noted above, there is no way to keep such evidence out, especially at the demurrer stage, as the prosecutor can simply amend the information to add more charges.

"Fourth, the defendant may have defenses which apply to some acts and not to others, or which carry varying force for the different acts. Even a strong defense to one act will be of little avail if the prosecution can at any time, and without any formal step,

13

shift its focus to others. While it may be theoretically possible to present various defenses to the various possible criminal acts without formal separation of the charges, the likely result in practice is jury confusion." (*Salvato, supra*, 234 Cal.App.3d at p. 881.)  In setting forth that reason, however, the *Salvato* court immediately inserted a footnote that undercut it:  "The response to an order for prosecutorial election will often be a cross-motion to amend the information adding separate counts for the various potentially criminal acts.  [Citation.]  For this reason, we agree that an election should be required only upon demand; a contrary rule would result in decreased exercise of prosecutorial discretion by encouraging the maximum number of charges in each case." (*Id.* at p. 881, fn. 3.)

The other major flaw in the *Salvato* court's analysis is that it runs contrary to an expansive body of case law concerning a unanimity instruction.  Under that line of cases, the prosecutor has the right to decide either to elect a specific act *or* the court must provide a unanimity instruction.  As our high court explained in *People v. Jones* (1990) 51 Cal.3d 294, where the evidence discloses more acts than offenses charged, "Either the prosecutor must select the acts relied on to prove the charges, or the jury must be given an instruction that it must unanimously agree beyond a reasonable doubt that the defendant committed the same specific criminal act." (*Id*. at p. 307.)  This has come to be known as the "'either/or' rule." (*People v. Gear* (1993) 19 Cal.App.4th 86, 90.)  The critical point of distinction is that the *Salvato* rule turns the either/or rule on its head and gives the defendant the right to force the prosecutor's hand.  For the reasons stated above, we find no basis in policy or precedent for that rule.  Accordingly, defendant was not entitled to require the prosecutor to select a single act for each charged offense.

As a final matter, defendant argues vigorously in his briefs that, without an election, defendant "must prepare to defend against literally thousands of potential claims because he does not know which of these claims will be offered in evidence at his trial." Forcing an election at the demurrer stage, however, does little to obviate this concern.  If

14

the People were required to make an election at the demurrer stage, they would likely respond by amending the information thereby adding hundreds or even thousands of counts to the information, but still proceed on only a subset of those claims at trial. In other words, the defendant would still be in the position of having to defend against all of the transactions presented in the preliminary hearing without knowing exactly how the prosecution will ultimately proceed at trial. The court has tools at its disposal to mitigate that difficulty, such as severing offenses into separate trials pursuant to section 954, or, under appropriate circumstances, continuances to address any shift in the prosecutor's strategy pursuant to section 1050. (See *People v. Simon* (2016) 1 Cal.5th 98, 122 ["a trial court has discretion to sever properly joined charges in the interest of justice and for good cause"].) And here the trial court has indicated its intent to require the People to make further offers of proof in pretrial conferences before setting the case for trial. The difficulty in preparing a defense against so many claims, however, is not a basis for a demurrer.

DISPOSITION

The petition for writ of mandate is denied. The order to show cause is discharged. The stay is dissolved upon issuance of the remittitur.

IKOLA, J.

WE CONCUR:

MOORE, ACTING P. J.

FYBEL, J.