Filed 8/14/18

CERTIFIED FOR PUBLICATION


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION TWO


| | |
|---|---|
| PEYMAN HEIDARY, | |
| Petitioner, | E068607 |
| v. | (Super.Ct.No. RIF1670175) |
| THE SUPERIOR COURT OF RIVERSIDE COUNTY, | OPINION |
| Respondent; | |
| THE PEOPLE, | |
| Real Party in Interest. | |


ORIGINAL PROCEEDINGS; petition for writ of prohibition. Steven G. Counelis, Judge. Petition is denied.

Khouri Law Firm, Michael J. Khouri and Jennifer W. Gatewood, for Petitioner.

No appearance for Respondent.

Michael A. Hestrin, District Attorney, Elaina Gambera Bentley, Assistant District Attorney, Kelli Catlett, Emily R. Hanks, and Erika L. Mulhere, Deputy District Attorneys, for Real Party in Interest.

In this matter, petitioner Peyman Heidary challenges the trial court's denial of his motion to set aside the indictment pursuant to Penal Code[1] section 995, subdivision (a)(1)(B). We have determined that the petition must be denied.

I

FACTUAL BACKGROUND[2]

Petitioner Peyman Heidary (Heidary) allegedly owned and oversaw a network of medical clinics to generate fraudulent billings to workers' compensation and insurance carriers. A non-attorney, he also allegedly controlled the day-to-day operations of various law firms, including California Injury Lawyers (collectively, the law firm.). He allegedly controlled or directed hiring and firing, legal decision making, and income flow to and from the law firm. Codefendants (and petitioners in a related writ case discussed below) Abramowitz, a lawyer, and Solis allegedly assisted Heidary in these operations.

A former chiropractor, Heidary also allegedly formed and controlled several health clinics in Southern California. Each was staffed by front and back room support

---

[1] All further citations are to the Penal Code, unless otherwise indicated.

[2] The factual background is compiled from petitioner's writ petition, the People's return, and petitioner's traverse. The allegations of the operations of the fraudulent scheme are summarized from the most detailed source, the People's opposition to petitioner's section 995 motion.

2

staff for scheduling and basic medical services (regardless of qualifications). Included were chiropractors operating as primary treating physicians, providing blanket, cookie-cutter services to each patient at Heidary's direction and making as many medical specialist referrals as possible. Despite their qualifications, they also wrote medical legal reports (medlegals) using Heidary's templates, the most expensive report in workers' compensation. Medical doctors, or specialists, provided blanket treatment and medlegals on Heidary's orders. Billings were made in each provider's name, and payments were made to their accounts. However, Heidary required fee-splitting and he was the only one allowed to withdraw funds. Heidary also had the doctors sell their accounts-receivables (AR) to him, which he then sold to third parties.

Under the alleged fraud scheme, injured workers appeared at the law firm, which would fill out boilerplate paperwork and, on Heidary's order, direct the workers to one of his clinics to begin treatment. At the clinic, the workers underwent treatments, regardless of need, such as massage, chiropractic, acupuncture, psychiatric and other services. After the maximum number of visits, they were discharged regardless of medical status. Each provider would fill out a " 'super bill,' " describing services rendered, which would then go to support staff to review compliance with Heidary's orders. They would forward the superbill to a medical billing company. Those companies would generate a form to start the claim process. The billing companies contracted with each provider to bill for services, on Heidary's order, including sometimes by forgery. Payment came from two sources: workers' compensation insurers and third-party AR buyers.

The People originally filed a criminal complaint, but later dismissed it in favor of a grand jury hearing. On May 16, 2016, a Riverside County criminal grand jury returned an indictment against petitioner and codefendants Cary Abramowitz, Ana Solis, and Gladys Ross[3] in Riverside County case No. RIF1670175. The indictment charges count 1 for conspiracy (§ 182, subd. (a)(1)), for conspiring to knowingly make or causing to be made any false or fraudulent claims for payment of health care benefits, in violation of section 550, subdivision (a)(6) (Heidary, Abramowitz, Solis, and Ross); counts 2 through 19 for false or fraudulent claims for payment of health care benefits to 18 different, named insurers (§ 550, subd. (a)) (Heidary, Abramowitz, Solis, and Ross); counts 20 through 37 for willfully and unlawfully making and causing to be made a knowingly false and fraudulent material statement and material representation to 18 different named insurers for payment of workers' compensation (Ins. Code, § 1871.4, subd. (a)(1)) (Heidary, Abramowitz, Solis, and Ross); counts 38 through 66 for money laundering (Pen. Code, § 186.10, subd. (a)) (Heidary); count 67 for unlicensed practice of medicine (Bus. & Prof. Code, § 2052, subd. (a)) (Heidary); count 68 for "capping" (Pen. Code, § 549) (soliciting, accepting or referring any business with the knowledge that, or with reckless disregard for whether, the individual or entity intends to violate Pen. Code, § 550 or Ins. Code, § 1871.4) (Heidary, Abramowitz, and Solis); and count 69 for the unlicensed practice of law (Bus. & Prof. Code, § 6126, subd. (a)) (Heidary and

_____

[3] Codefendant Ross, who managed medical billing, is named in the indictment. She is mentioned here only for background; she does not have an active petition for writ review before this court.

4

Abramowitz). The indictment also alleges a white-collar crime enhancement (Pen. Code, § 186.11, subd. (a)(2)) (Heidary, Abramowitz, Solis, and Ross).

On July 18, 2016, petitioner filed a demurrer to this indictment, challenging in part whether he had received notice of the charges and whether the indictment improperly aggregated multiple acts into single counts. The People opposed and petitioner filed a reply. The trial court conducted a hearing on August 19, 2016, and overruled the demurrer. Petitioner did not seek review of that decision. But, on December 19, 2016, petitioner filed a motion to set aside the indictment pursuant to section 995, essentially repeating the arguments from demurrer. The People again opposed. The trial court issued a ruling denying the motion on June 9, 2017. That order is the subject of the instant petition for writ of prohibition, which petitioner filed on June 26, 2017. This court summarily denied the petition on August 8, 2017. Petitioner sought review with the California Supreme Court.

On October 11, 2017, the Supreme Court issued the following order: "The petition for review is granted. The matter is transferred to the Court of Appeal, Fourth Appellate District, Division Two, with directions to vacate its order denying the petition for writ of mandate and to issue an order directing respondent court to show cause why petitioner is not entitled to the relief requested based on his claims that (1) the indictment failed to provide constitutionally adequate notice of the charges against him; and (2) the indictment improperly aggregated multiple acts into single counts. The request for stay is denied without prejudice to petitioner renewing the request in the Court of Appeal." This

5

court vacated its summary denial of August 8, 2017. Petitioner then requested an immediate stay of all further proceedings in the underlying criminal case. This court issued the order to show cause, addressing the two points in the Supreme Court's October 11, 2017 order and setting a briefing schedule. This court then denied petitioner's request for immediate stay and petitioner again sought review with the Supreme Court.[4] On December 13, 2017, the Supreme Court denied the petition for review and application for stay. After an extension of time, the parties completed their briefing.[5]

---

[4] On November 7, 2017, the Fourth District, Division Three, issued *Hoffman v. Superior Court* (2017) 16 Cal.App.5th 1086, after an order to show cause on substantially similar issues at the direction of the Supreme Court. *Hoffman* involved similar insurance fraud charges, aggregated to form felony counts, contained in an information and reviewed for probable cause at a preliminary hearing. It was also subject to a demurrer, which that superior court overruled. Here, petitioner was indicted by a grand jury, which heard testimony and received exhibits into evidence. The case is presented here as a writ petition following denial of a section 995 motion. Substantively, the cases are closely related. The Supreme Court denied review of *Hoffman* on February 14, 2018. Because of the difference in procedural posture in this case from *Hoffman* and because this case also addresses Insurance Code section 1871.4, which *Hoffman* does not, we issue *Heidary v. Superior Court* as a published opinion.

[5] Concurrently, a similar scenario played out in the companion case of *Abramowitz, et al. v. Superior Court*, No. E068714, arising from the same facts and indictment and subject to the same writ procedures and requests for review in our Supreme Court. Because the cases are closely related and similar arguments were raised in each, this court waited for briefing to complete in that case also before proceeding. Heidary elected to proceed at oral argument; Abramowitz did not. While we issue this case as a published opinion, there is no need to publish both, and *Abramowitz v. Superior Court* will issue separately as a nonpublished opinion.

6

II

DISCUSSION

Petitioner seeks a writ of prohibition to vacate the respondent superior court's order denying his motion to set aside indictment, and that such motion be granted with charges against petitioner dismissed. He broadly argues that the indictment lacks reasonable or probable cause on all counts for various reasons, and that the indictment cannot be amended to effect a demand for an election. Among his arguments are that the insurance fraud and workers' compensation fraud claims are improperly aggregated, and that the indictment does not give due process notice of the charges against him to prepare a defense for trial. The Supreme Court's order quoted above focuses on these last two points. We disagree with petitioner and specifically address the petition as framed by the particular issues the Supreme Court articulated.

A petition for writ of prohibition lies to prevent a threatened judicial act that is without, or in excess of, a court's jurisdiction. (Code Civ. Proc., § 1102 ["The writ of prohibition arrests the proceedings of any tribunal, corporation, board, or person exercising judicial functions, when such proceedings are without or in excess of the jurisdiction of such tribunal, corporation, board, or person."]; *Abelleira v. District Court of Appeal* (1941) 17 Cal.2d 280, 286-291; *Green v. City of Oceanside* (1987) 194 Cal.App.3d 212, 220.)

A.      Jurisdiction

Preliminarily, the People acknowledge that the order to show cause invoked two issues: "Whether petitioner was afforded due process notice of the charges against him and whether the indictment improperly aggregated multiple acts into single counts." But, the People argue in addition that this court "does not have jurisdiction over either claim in the context of petitioner's section 999a writ from the denial of his section 995 motion to set aside the indictment." We disagree.

The main thrust of the People's argument is that petitioner raised his instant arguments in a previous demurrer to the superior court, which overruled the demurrer, but petitioner never challenged the ruling. Instead, the People argue, petitioner repackaged his arguments into an improper section 995 motion. Yet, it was a section 995 motion that the trial court and the parties contemplated during the hearing on the parties' demurrers. The *Hoffman* court also found that approach appropriate. (*Hoffman*, *supra*, 16 Cal.App.5th, at pp. 1096-1097 ["where the evidence is truly inadequate to convey the circumstances of the alleged offense, defendant's remedy is a section 995 motion"].) This court therefore finds this matter to be procedurally proper and that the court has jurisdiction to consider it.

Having addressed the People's jurisdiction argument, we turn to the issues the Supreme Court identified. However, we will examine the issues in reverse order.

B.      The Indictment Properly Aggregates Multiple Acts into Single Counts

The Supreme Court directed us to order the parties to show cause as to whether "the indictment improperly aggregated multiple acts into single counts."

First, only a portion of the 69 counts in the operative indictment involve aggregation of multiple acts into single counts.  Notably, counts 2 through 19 for insurance fraud in violation of Penal Code section 550, subdivision (a)(6), explicitly allege that "the aggregate amount of claims and amount at issue exceeded Nine Hundred Fifty dollars ($950) . . . ."  Counts 20 through 37 for violations of Insurance Code section 1871.4, subdivision (a)(1) (the workers' compensation claims as defined in Lab. Code, § 3207), do not overtly use the term "aggregate" regarding multiple acts, but the counts are based on such multiple acts.  Further, petitioner argues as much in the petition and in his traverse, contending that the insurance and workers' compensation fraud claims are improperly aggregated, violate the due process requirement of adequate notice of the charges against him (discussed in the next section), and that the other counts against him (e.g., conspiracy, capping, etc.) must fall if the fraud claims are improper.  Counts 38 through 66 for money laundering (Pen. Code. § 186.10, subd. (a)), addressed solely against this petitioner, do not aggregate claims, nor do the remaining counts.  Accordingly, we will only address the aggregation issue with respect to counts 2 through 19 and 20 through 37.

Petitioner argues that the insurance fraud counts do not state specifics as to any single act, but aggregate claims of fraudulent acts by individual insurer, one insurer per

9

count.  But, section 550, subdivision (c)(2)(B), permits aggregation of claims:  where the amount at issue is $950 or less, the claim is a misdemeanor; if over $950 in any 12-consecutive-month period, it is a felony.  Petitioner relies on *People v. Zanoletti* (2009) 173 Cal.App.4th 547, 560, to argue that aggregation in this manner is improper.  However, *Zanoletti* dealt with charges under section 550, subdivision (a)(1).  Section 550, subdivision (c)(2)(B), explicitly permits aggregating violations of section 550, subdivision (a)(6), as applicable here.  The People charge each count as a felony with amounts exceeding $950, over a five year six month period.  The individual claims are presented in a manner, described fully in the next section below, through which the People may identify claims that exceed in the aggregate the amount of $950 in a 12-consecutive-month period contained within the five year six month period, making it a matter of proof at trial to show claims aggregated to meet the 12-consecutive-month requirement.

Thus, each of counts 2 through 19 allege that multiple fraudulent claims against each insurer aggregate to exceed the minimum of $950 for charging as a felony.

For example, count 2 (insurance fraud) alleges:

"For a further and separate cause of action, being a different offense from but connected in its commission with the charge set forth in count 1 hereof, the Criminal Grand Jury of the County of Riverside by this Indictment hereby accuses PEYMAN HEIDARY and CARY DAVID ABRAMOWITZ and ANA SOLIS and GLADYS ROSS of a violation of Penal Code section 550, subdivision (a), subsection (6), a felony, in that

10

on or about January 1, 2009 through and including July 15, 2014, in the County of Riverside, State of California, the defendants did willfully and unlawfully and knowingly make and cause to be made a false and fraudulent claim for payment of a health care benefit, to wit, from ACE, and the claim and amount at issue exceeded Nine Hundred Fifty dollars ($950) and the aggregate amount of claims and amount at issue exceeded Nine Hundred Fifty dollars ($950) in a five years and six-month consecutive period.

"It is further alleged that in the commission and attempted commission of the above offense the said defendants, PEYMAN HEIDARY and CARY DAVID ABRAMOWITZ and ANA SOLIS and GLADYS ROSS, with the intent so to do, took, damaged and destroyed property of a value exceeding $200,000, within the meaning of Penal Code section 12022.6, subdivision (a), subsection (2)."

The aggregated count thus presents a single offense—"*a further and separate cause of action*" in which "the defendants did willfully and unlawfully and knowingly make and cause to be made *a* false and fraudulent claim for payment of a health care benefit"—like the counts that Division Three of this court determined to be permissible aggregations of claims to constitute a felony count. (*Hoffman*, *supra*, 16 Cal.App.5th at p. 1095.)

Nor does section 802, subdivision (a), impose a one-year statute of limitations on individual claims, as petitioner briefly claims in his traverse. Petitioner contends that many of the individual claims are for less than $950 and therefore constitute misdemeanors, meaning that section 802, subdivision (a), imposes a one-year statute of

11

limitations. Under that theory, petitioner asserts, claims over a year old would have to be dismissed. However, he does not support his contention with either substantive argument or citation to authority other than section 802, subdivision (a). (*Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, 956 [arguments not supported by adequate argument or authority may be deemed forfeited].)

Further, he ignores that the People have aggregated and pleaded the counts in the indictment as felonies, as permitted under section 550, subdivision (c)(2)(B), which impose a three-year limitations period. (See § 801.) Moreover, a longer limitations period applies in the case of felony insurance fraud. "Notwithstanding Section 801 or any other provision of law, prosecution for any offense described in subdivision (c) of Section 803 shall be commenced within four years after discovery of the commission of the offense, or within four years after the completion of the offense, whichever is later." (§ 801.5.) Section 803, subdivision (c)(6), includes felony insurance fraud in violation of section 550 and Insurance Code section 1871.4, the specific grounds stated in the indictment here. The parties may differ as to when claims were discovered or completed, and such will be subject to proof at trial.

Next, petitioner's contentions relating to counts 20 through 37 are also unavailing. As pleaded, these workers' compensation counts are "connected" to counts 1 through 19, including the aggregated claims in counts 2 through 19. However, the charged violations of Insurance Code section 1871.4, subdivision (a)(1), do not themselves rely on aggregating amounts to reach a felony minimum amount. Instead, they again state a

12

single offense of making "*a* knowingly false and fraudulent material statement and material representation" to the victim insurers. For example, count 20 alleges:

"For a further and separate cause of action, being a different offense from but connected in its commission with the charges set forth in counts 1 through 19 hereof, the Criminal Grand Jury of the County of Riverside by this Indictment hereby accuses PEYMAN HEIDARY and CARY DAVID ABRAMOWITZ and ANA SOLIS and GLADYS ROSS of a violation of Insurance Code section 1871.4, subdivision (a), subsection (1), a felony, in that on or about January 1, 2009 through and including July 15, 2014, in the County of Riverside, State of California, the defendants did willfully and unlawfully make and cause to be made a knowingly false and fraudulent material statement and material representation, to wit, to ACE, for the purpose of obtaining and denying compensation, as defined in Labor Code section 3207."

The workers' compensation claims under Insurance Code section 1871.4, subdivision (a)(1), thus present no greater aggregation problem than do those in counts 2 through 19 for insurance fraud. (See *Hoffman*, *supra*, 16 Cal.App.5th at p. 1095.)

Altogether, the claims discussed above are properly aggregated in the indictment.

C.     The Indictment Provides Constitutionally Adequate Notice

The Supreme Court also directed us to order the parties to show cause as to whether "the indictment failed to provide constitutionally adequate notice of the charges against him[.]" In *Hoffman*, Division Three of this court observed that, " 'Under modern pleading procedures, notice of the particular circumstances of an alleged crime is

13

provided by the evidence presented to the committing magistrate at the preliminary examination, not by a factually detailed information.' " (*Hoffman*, *supra*, 16 Cal.App.5th at p. 1092, quoting *People v. Jennings* (1991) 53 Cal.3d 334, 358.) In fact, " 'the time, place and circumstances of charged offenses are left to the preliminary hearing transcript; it is the touchstone of due process notice to a defendant.' [Citations.]" (*Hoffman*, at p. 1092.) And further, " 'Assuming that the indictment is sufficiently definite and certain in charging several different offenses, no injury resulted to the defendant by reason of a failure to separate the charge into separate counts. Indeed, he is the gainer thereby, as only one penalty can be imposed.' " (*Id.* at pp. 1094-1095, quoting *People v. Steelik* (1921) 187 Cal. 361, 370.)

Nonetheless, petitioner argues that in *Hoffman*, *supra*, 16 Cal.App.5th at p. 1093, each count of that felony information "specifically identified the name of the patient, date of service at issue, date the claim was submitted, and type of service at issue." He goes on to contend that "Division Three of this Court held that the defendant's due process right to notice was satisfied based on the preliminary hearing transcript and specific information, but the information in *Hoffman* provided far more notice than the indictment in this case. In *Hoffman*, the People set forth the precise time frames, patient files, and preliminary exhibit numbers within the felony information. . . . Whereas, the indictment in this case fails to specify any of that information. The indictment against the Petitioner simply states that over the period of five years, the Petitioner allegedly submitted false

14

claims." However, petitioner misstates *Hoffman* and misrepresents the information presented in this case.

The *Hoffman* court reviewed the simplified California pleading rules and the due process requirement, and then discussed the accusatory pleading in that case. (*Hoffman*, *supra*, 16 Cal.App.5th at pp. 1091-1093.) That court stated, "Viewing the amended information against this backdrop, we first observe that it contains more information than is necessary to satisfy the basic statutory pleading requirements. Each count identifies the offense, the victim (for most counts, an insurance provider), the type of alleged fraudulent claim, the specific timeframe during which the offense occurred, the patient files relevant to the offense, and the preliminary hearing exhibit number containing the evidence to support the count. Under [Penal Code] sections 948 through 959, it would have been sufficient to simply state: Defendant did . . . knowingly make or cause to be made a false or fraudulent claim for payment of a health care benefit. (See § 550, subd. (a)(6).) Due process may require that the victim and type of fraud be identified (which was the case in the original information). And whether or not due process does so require, we believe it to be a best practice where there are so many counts involved. *But it was certainly unnecessary, under the statutory framework, to identify precise timeframes, patient files, or preliminary hearing exhibit numbers. That was the function of the preliminary hearing.*" (*Hoffman*, at p. 1093, italics added.) That court also referred to the inclusion of, for example, a " 'list of patients' " for each healthcare claim submitted as, "that information is surplusage." (*Id*. at p. 1095.) It is apparent that the

15

*Hoffman* court did not "h[o]ld that the defendant's due process right to notice was satisfied based on the preliminary hearing transcript *and specific information . . .*" in the accusatory pleading, as petitioner claims. It is that "specific information" that the *Hoffman* court found unnecessary so long as it was in the transcript and exhibits from the preliminary investigation or, here, grand jury proceedings.

This court has reviewed the indictment, the grand jury transcript, and exhibits submitted to the grand jury. Those exhibits collect victim responses to queries pursuant to Insurance Code section 1877.3. Typically, individual fraud managers for each of the victim insurers prepared the responses to the section 1877.3 letters, in the form of spreadsheets and related listings or summaries. Those responses were labeled according to victim and presented to the grand jury.[6] (The section 1877.3 letters were generally included in a file such as CNA-1, LIB-1, or ACE-1, which were discussed during the grand jury proceedings, but not included in the record of this petition. A representative

---

[6] Spreadsheet and other files specifically included in the record of this petition are: ACE2, ACE3, ACE4, ACE5, ACM2, ACM3, ACM4, ACM5, AIG2, AIG3, AIG4, BERK2, BERK4, BERK6, BERK7, CNA2, CNA3, CNA6, CNA7, CNA8, CRUM2, CRUM4, CRUM5, EMP2, EMP4-1, EMP6, EMP8, ENIC1, ENIC2, FARM2, FARM3, FARM4, FARM5, FARM6, FIRE2, FIRE4, FIRE5, FIRE6, FIRE7, HART2, HART3, HART4, HART5, HART6, ICW2, ICW3, ICW5, ICW6, LIB2, LIB3, LIB4, LIB5, REP2, REP3, REP4, REP5, REP6, SCIF2, SCIF3, SCIF4, TRAV1, TRAV2, TRAV3, ZEN2, ZEN4, ZUR2, ZUR3, and ZUR4-2. These represent ACE American Insurance Co.; American Claims Management; American International Group; Berkshire/Hathaway; CNA Insurance; Crum & Forester; Employers Insurance; Everest National Insurance Co.; Farmer's; Fireman's; Hartford; Insurance Carriers of the West; Liberty Mutual; Republic Indemnity; State Compensation Insurance Fund; Traveler's; Zenith Insurance Co.; and Zurich Insurance of North America. Additional files are discussed in portions of the grand jury transcript.

sample of a section 1877.3 letter is the first document in file SCIF3, titled "claims binder SCIF Martinez Figueroa Alvarez." The People took the testimony of the insurers' fraud managers, or their representatives (such as in-house data analysts or third-party managers who collected the data for the responses), before the grand jury to walk through the spreadsheets and explain the data within them.

For example, Oliver Glover, who manages the health care fraud investigations team at Zenith Insurance Company, testified as to the fraud investigation process at Zenith. In response to the Insurance Code section 1877.3 letter (discussed as file ZEN-1), Mr. Glover directed the preparation of Zenith's response with a company data analyst. Mr. Glover explained that a document in file ZEN-2 provided a key to understanding the spreadsheet of data in response to the request. He further explained that the company's data systems extracted all information from each bill to analyze what went on with particular patients, doctors and trends in medical care. The spreadsheet itself—titled "Zenith Data for 1877 Request 2014-04-08 – Excel"—could be searched by the injured worker's name, by client number, by IRS number, by service address, by pay to address, and other means. The spreadsheet provides detailed tracking information as to each claim, each billing, the amount of the billing, how much was received, the dates of the billing, any denial of charges, the service that was billed (i.e., the particular treatment) with its five-digit code and any modifier of the treatment, any unique flags, and other information captured under columns A through AQ. The People have explained several times that each entry—that is, each service with its related billing and all other

17

modifications as described above—represents a separate fraudulent claim on petitioner's part. A separate tab on the spreadsheet provides payment information by date, amount, and entity paid. The information provides petitioner with specific notice of each transaction, aggregated for indictment counts 18 and 36 involving allegedly fraudulent claims against Zenith for the purpose of meeting the $950 in a 12-consecutive-month period requirement under Penal Code section 550, subdivision (a)(6), as well as under Insurance Code section 1871.4, subdivision (a)(1). The notice is contained within the grand jury exhibits and testimony and is adequate. (*Hoffman*, *supra*, 16 Cal.App.5th at p. 1093.)

Similarly, Glen Smith, a special investigator for Zurich Insurance of North America, testified about the fraud investigation process at Zurich. He also received an Insurance Code section 1877.3 letter and prepared Zurich's response in the form of spreadsheets. Two spreadsheets in file ZUR-2 include one entitled "Zurich Copy of Peymen [*sic*] Heidary link to PO Box ZNA Exposure – Excel," which lists payees by name and tax identification number (TIN) and by year for the total amounts actually paid to each in the first tab, "PD by provider." The next tab, "PD by claim," identifies claim numbers line by line, with the amount paid for each by year with a grand total. The "detail" tab provides detailed information by claim number, TIN, line of business, the handling office, the claimant's name, the name of the insured, the payee by name and address information over multiple columns, the loss state, the payee TIN, the date of loss (date on which the claim occurred), claim entry date into the Zurich system, payment date

18

and year, the "pay kind" code used to identify the service, date of service, from and to (i.e., range of dates paid), total billed and total paid. The final tab, "Heidary TINS," is simply a list of TINs to identify claims paid to petitioner.

The next spreadsheet, "Zurich Peyman Heidary and California Injury Lawyers," also includes tabs. The first is "billed versus PD by year, by address." It provides a listing of payments made by years (2009 through 2014) by address of the payee. The two remaining tabs ("CA Injury Lawyer detail" and "P.O. Box 76002 detail") include detail columns, similar to the first spreadsheet, for the summary totals in the first tab. File ZUR-3 compiles each individual Division of Workers' Compensation form 1 (DWC-1) for Zurich, completed by each claimant to verify the date and type of injury.

It is a straightforward matter to determine each claim line item and identify the dates and amounts of the claim paid for aggregation purposes. Again, as the People have explained, each entry represents a separate allegedly fraudulent claim by petitioner. As with the Zenith example, above, the Zurich information arrayed in this manner is easily discerned and, with the grand jury transcript, provides adequate notice of each transaction for the individual indictment counts. (*Hoffman*, *supra*, 16 Cal.App.5th at p. 1093.)

In another example, Nicole Sullivan is a provider fraud program manager for American Claims Management (ACM), a third-party administrator that administers claims for insurance companies insuring employers. She also responded to an Insurance Code section 1877.3 letter on the parts of multiple insurers, among them California Restaurant Mutual Benefit Corporation (CRMBC). She similarly testified to the contents

19

of a spreadsheet of patients, claims, billings, types of treatment, dates of services and billings, date of check processing, entity to whom payment was made, etc., contained in file ACM-2. The People briefly reviewed file CRMBC1 with Ms. Sullivan, a file not included in the record here, but determined not to admit it because it duplicated the data in ACM-2. Supplemental information was available in ACM-3, including all documents within each claim file. Counts 6 and 24 involve allegedly fraudulent claims against CRMBC. Although there is no dedicated file labeled "CRMBC," the data in the ACM file and Ms. Sullivan's testimony provides adequate notice to petitioner. (*Hoffman*, *supra*, 16 Cal.App.5th at p. 1093.)

Other files for other victim insurers are in the record and were similarly presented to the grand jury and were subject to detailed descriptive testimony by insurer fraud agents or representatives. All told, the testimony and exhibits in the grand jury transcript provide an effective roadmap to satisfy the due process notice requirement.

Regardless, petitioner contends that he must prepare to defend against thousands of potential fraud claims. The court in *Hoffman* addressed this specific point as well. "The court has tools at its disposal to mitigate that difficulty, such as severing offenses into separate trials pursuant to section 954, or, under appropriate circumstances, continuances to address any shift in the prosecutor's strategy pursuant to section 1050. [Citation.]" (*Hoffman*, *supra*, 16 Cal.App.5th at p. 1098.) Additionally, the trial court may issue a unanimity instruction. (*Id*. at p. 1095.)

20

To the extent that petitioner continues to claim that the indictment, along with the grand jury transcript and exhibits, does not provide him notice of the charges against him, the court can only conclude that it is because petitioner is turning a blind eye while advancing his argument. Between the indictment, the contents of the thorough and detailed grand jury transcript, and the exhibits presented to the grand jury and contained in the record (including the record here), due process has been satisfied and petitioner has been given adequate notice of the charges against him. (*Hoffman*, *supra*, 16 Cal.App.5th at p. 1092 [information and preliminary hearing transcript provide due process notice].) In that light, this case does not fall under the " 'unusual circumstances' " in which " 'an otherwise proper pleading may . . . fail to afford due process notice[.]' " (*Ibid*., quoting *People v. Lucas* (1997) 55 Cal.App.4th 721, 737.)

Accordingly, there is no basis for issuing a writ of prohibition.

III

DISPOSITION

The petition for writ of prohibition is denied.

**CERTIFIED FOR PUBLICATION**

RAMIREZ

P. J.

We concur:

MILLER

J.

21

FIELDS _____
                           J.